1999-NMCA-090

986 P.2d 463

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Tammy SHAULIS–POWELL,
Defendant–Appellant,**

**and**

**Daniel B. Shaulis, Defendant–Appellant.**

**Nos. 19,215, 19,216.**

Court of Appeals of New Mexico.

April 15, 1999.

Certiorari Denied Nos. 25,742, 25,737, May 28, 1999 and June 21, 1999.

Patricia A. Madrid, Attorney General, James O. Bell, Ass't Attorney General, Santa Fe, for Plaintiff–Appellee.

John A. McCall, Albuquerque, for Defendant–Appellant Tammy Shaulis–Powell.

Phyllis H. Subin, Chief Public Defender, Nancy M. Hewitt, Ass't Appellate Defender, Santa Fe, for Defendant–Appellant Daniel B. Shaulis.

## OPINION

PICKARD, Chief Judge.

{1} This opinion addresses the consolidated appeal of Defendants' convictions. Defendant Daniel Shaulis (Daniel) appeals his conviction for trafficking marijuana by manufacture. See NMSA 1978, § 30–31–20(A)(1) (1990). Defendant Tammy Shaulis–Powell (Tammy) appeals her conviction for possession of marijuana in excess of eight ounces. See NMSA 1978, § 30–31–23(B)(3) (1990). Both appeals are based on the following issues: (1) whether the growing of marijuana can be considered trafficking by manufacture and (2) whether the trial court erred in denying Defendants' motion to suppress a search based on consent. We answer both questions in the negative, and therefore we affirm Tammy's conviction for possession and reverse Daniel's conviction for trafficking.

**FACTUAL AND PROCEDURAL BACK-GROUND**

{2} On September 1, 1996, State Police Officer Adrian Lobato received a tip from a known citizen informant that there was marijuana growing behind Defendants' Bosque Farms residence. Officer Lobato, with Officer Robert Avilucea accompanying him, drove to Defendants' residence to follow up on the tip. They drove on a dirt road behind the residence to try to view any suspicious vegetation growing in the area indicated by the informant. The vegetation was approximately forty or fifty yards from the officers' location in the car. Officer Lobato was unable to state with certainty that the vegetation was marijuana, but believed that it was, based on his experience and the plants' color.

{3} As a result of their observations, the officers approached the front door of the residence and knocked. Daniel's mother answered the door. The officers were not in uniform, but were wearing their guns. Officer Lobato's weapon was secured in a thigh holster and Avilucea's was tucked into the back of his waistband. The officers identi-

fied themselves, showed their badges and commission cards, stated that they were investigating the suspected presence of marijuana on the premises, and asked for consent to search. Daniel's mother stated that she was just visiting and called Tammy to the door.

{4} When Tammy appeared at the door, the officers identified themselves and asked for her consent to search the premises for marijuana. She told them that she first wanted to speak to her husband. Daniel then came to the door, and the officers again identified themselves and asked for consent to search. Daniel asked whether they had a warrant. Officer Lobato told Daniel that they had no warrant, but that he felt that he had enough information to be able to secure one. Officer Lobato further stated that if no consent was forthcoming, he would seek to obtain a warrant, which would require summoning more officers to secure the residence and ensure that no evidence was destroyed. Officer Lobato told Daniel that if he consented and marijuana was found, no arrest would be made at that time, whereas if a warrant was obtained and marijuana was found, arrests would be made.

{5} Daniel then consented to the search and led the officers through the residence and out the back door. Officer Lobato observed eight marijuana plants growing outside the back door. He then read Defendants their *Miranda* warnings. The officers uprooted the plants and took them to Santa Fe for analysis. The plants tested positive for marijuana and weighed between 10 and 13 pounds, excluding the stalks.

{6} Based on these events, Daniel was indicted for trafficking controlled substances by manufacturing marijuana plants. At trial, the jury was instructed on trafficking by manufacture and possession with intent to distribute marijuana. The jury convicted Daniel of trafficking by manufacturing marijuana. Tammy was similarly indicted for trafficking, and the jury was also instructed on possession with intent to distribute marijuana and possession of marijuana over eight ounces. The jury convicted Tammy of simple possession. Both Tammy and Daniel now appeal.

## DISCUSSION

### The Trial Court Did Not Err by Denying Defendants' Motion to Suppress the Search Based on Daniel's Consent

■ {7} In reviewing the denial of a motion to suppress, we defer to the trial court's findings of historical fact if they are supported by substantial evidence. *See State v. Attaway,* 117 N.M. 141, 144–46, 870 P.2d 103, 106–08 (1994); *State v. Tywayne H.,* 1997–NMCA–015, ¶ 5, 123 N.M. 42, 933 P.2d 251. However, this Court reviews the application of the law to the facts de novo. *See Tywayne H.,* 1997–NMCA–015, ¶ 5, 123 N.M. 42, 933 P.2d 251,

■ {8} The trial court found that Daniel voluntarily consented to the search of his property that yielded the marijuana plants. To determine the voluntariness of consent, we examine whether the consent was specific and unequivocal, and whether the consent was the result of duress or coercion, in light of the presumption disfavoring the waiver of constitutional rights. *See State v. Grossman,* 113 N.M. 316, 319, 825 P.2d 249, 252 (Ct.App. 1991). At issue in this case is whether Daniel gave consent as a result of duress or coercion.

■ {9} The voluntariness of consent depends on the totality of the circumstances. *See State v. Cohen,* 103 N.M. 558, 563, 711 P.2d 3, 8 (1985). Defendants contend that under the totality of the circumstances, Daniel's consent was the product of coercion or duress by the officers. As Defendants indicate, there are facts in this case that weigh against voluntary consent. For example, they were not advised of their rights until after the search. This is one factor to consider. *See id.*

■ {10} In his brief, Daniel focuses on the argument that because the officers told him that they had enough evidence to obtain a search warrant, his refusal would have been futile. Under *State v. Lewis,* 80 N.M. 274, 277, 454 P.2d 360, 363 (Ct.App.1969), *overruled in part on other grounds by State v. Nemrod,* 85 N.M. 118, 122, 509 P.2d 885, 889 (Ct.App.1973), consent is not voluntary if it is a mere acquiescence to a claim of lawful authority.

■ {11} However, the testimony of the officers at the suppression hearing demonstrates that they did not assert unequivocally that they would be able to obtain a warrant. Officer Lobato testified that he told Defendants that he "felt" or "believed" he had enough evidence to secure a search warrant. The officer's statement would not have prevented Defendants from insisting that a warrant be obtained prior to a search and would not have necessarily led them to believe that insistence on a warrant would be futile. Rather, the officer's statement was simply the officer's assessment of the situation. *See generally* 3 Wayne R. LaFave, *Search & Seizure* § 8.2(c) (3d ed.1996) (noting at 653–54 that it is not coercion for an officer to "accurately inform[ ] the individual of his precise legal situation"). We hold that the officer's comment that he felt he could get a warrant did not rise to the level of coercion or duress.

■ {12} Even if the officer's comment could be construed as an assertion that he could get a warrant, federal case law indicates that as long as there is probable cause to support a warrant, the officer can inform the suspect that he or she will get a warrant without invalidating subsequent consent. *See, e.g., United States v. Evans,* 27 F.3d 1219, 1231 (7th Cir.1994); *United States v. Kaplan,* 895 F.2d 618, 622 (9th Cir.1990). We believe that this formulation of the law makes good sense. If a warrant is obtainable, defendants' privacy rights under the Fourth Amendment are not violated. *See* LaFave, *supra,* at 652.

{13} Although the existence of probable cause is a close question in this case, we think it likely that a magistrate would have issued a warrant on the officer's information. Officer Lobato received a tip from a known citizen informant that marijuana was growing in a specific location on Defendants' property. The officers then corroborated the tip by visiting the location and observing, in the precise location described, plants that appeared to be marijuana based on the officers' experience. Our cases would appear to support upholding a search-warrant affidavit containing such information. *See, e.g., State*

*v. Rogers,* 100 N.M. 517, 519, 673 P.2d 142, 144 (Ct.App.1983) (denying motion to suppress where officers corroborated tip by flying over location and seeing plants that " 'appeared to me like marijuana' " and using binoculars to verify this from at least 400–600 feet away); *State v. Donaldson,* 100 N.M. 111, 116, 666 P.2d 1258, 1263 (Ct.App. 1983) (holding that due consideration may be given to the fact that the affiant was a law enforcement officer and to the effect of his experience when assessing probable cause).

■ {14}  Tammy also contends that consent was given under duress as a result of the officers' indication that if marijuana were found in a consensual search no arrest would be made at that time, whereas if a warrant were obtained and then marijuana were found, they would arrest Defendants. At first glance, this looks like a threat. However, it is commonly held that where the officer's "threat" is to perform some legal action (in this case, to make an arrest if marijuana was found) it does not invalidate consent. *See* LaFave, *supra,* at 653–54 & n. 84 (citing *United States v. McCarthur,* 6 F.3d 1270 (7th Cir.1993) (holding threat of seizure did not invalidate consent where police had authority to seize property for drug dog to sniff) and *People v. Savage,* 698 P.2d 1330 (Colo.1985) (holding threat to frisk defendant did not invalidate consent where police could conduct lawful frisk)).

{15}  The officers' proposal to forego arrest if Defendants consented was a lawful incentive for Defendants' cooperation. It could also be that the officers reasonably believed that Defendants' cooperation would be indicative of their cooperation in the course of prosecution, thereby rendering arrest and bond procedure unnecessary. The explanation that they believed that they had enough for a warrant and that, if no consent was forthcoming, the premises would be secured while they obtained one, was a reasonable explanation of the process that would be followed. The officers did not overstep their bounds by then informing Daniel that no arrest would follow a consensual search. Rather, the officers gave this legal choice to Daniel, and it is conceivable that an individual might rather consent and secure the officers' cooperation than wait until a warrant is obtained. *See State v. Bidegain,* 88 N.M. 384, 391, 540 P.2d 864, 871 (Ct.App.1975) (Hendley, J., dissenting), *rev'd in part,* 88 N.M. 466, 541 P.2d 971 (1975).

■ {16}  Tammy finally contends that the search was invalid because of the officers' failure to give Defendants *Miranda* warnings until they found the marijuana. The officers, however, testified that Defendants were not in custody and were free to leave at any time. We do not find Tammy's argument persuasive. We have held that *Miranda* warnings are not a prerequisite to obtaining a valid consent to search. *See State v. Mann,* 103 N.M. 660, 665, 712 P.2d 6, 11 (Ct.App.1985). Tammy also argues that the situation was analogous to the "walk and talk" procedure prohibited under Hawaii law, *see State v. Quino,* 74 Haw. 161, 840 P.2d 358, 364–65 (1992), and that the officers effectively seized Defendants in their home. We are similarly unpersuaded by Tammy's argument that the Defendants were "seized" in their home. The trial court found that "securing the premises" meant "making sure the marijuana plants did not leave the yard," and expressly found an absence of any coercion. In light of the officers' testimony that Defendants were free to come and go from the house, and in light of New Mexico's law being different from Hawaii's, *see State v. Walters,* 1997–NMCA–013, ¶ 12, 123 N.M. 88, 934 P.2d 282, we cannot say that they were "seized" upon the officers' request for consent. We hold that Daniel's consent to the search was valid.

*Growing Marijuana, Without More, Does Not Support a Charge of Trafficking in Marijuana by Manufacture*

■ {17}  The interpretation of a statute is a question of law which this Court reviews de novo. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995); *State v. Arellano,* 1997–NMCA–074, ¶ 3, 123 N.M. 589, 943 P.2d 1042. Both Defendants challenge the sufficiency of the evidence to support a trafficking-by-manufacture conviction under Section 30–31–20(A)(1). Daniel challenges his conviction under that section, and Tammy claims that she was prejudiced by virtue of being indicted under that sec-

tion. The State now concedes that neither Defendant should have been charged with trafficking by manufacture, and we agree with this conclusion.

{18} The statutory section at issue reads: A. As used in the Controlled Substances Act, "traffic" means the:

(1) manufacture of any controlled substance enumerated in Schedules I through V or any controlled substance analog as defined in Subsection W of Section 30–31–2 NMSA 1978[.]

"Manufacture" is defined in Section 30–31–2(M) as:

the production, preparation, compounding, conversion or processing of a controlled substance or controlled substance analog by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis and includes any packaging or repackaging of the substance or labeling or relabeling of its container[.]

{19} There is no dispute that the conduct intended to support the charge was the growing of eight marijuana plants on Defendants' property. Nor is there dispute that plants were growing in their natural state when the officers seized them. The plain meaning of "manufacture" does not include simply growing marijuana. Without more, growing marijuana does not constitute manufacture. Even if growing marijuana could be considered "production" under the statute, "production" is modified by the phrase "by extraction from substances of natural origin or independently by means of chemical synthesis[.]"

{20} Because the evidence did not support the trafficking by manufacture charge, Daniel's conviction is reversed and his case remanded for further proceedings. Tammy asserts that, although she was not ultimately convicted of this charge, she was prejudiced by having to defend against it. We disagree.

{21} Tammy was not, in fact, prejudiced by this charge. To the extent that Tammy argues that she might not have been convicted at all if she and Daniel had been properly charged with possession with intent to distribute, rather than trafficking, we disagree. The jury convicted Daniel of trafficking, but skipped over the possession-with-intent charge to convict Tammy of simple possession. Given the evidence that eight large marijuana plants were growing in Defendants' back yard and the evidence that Daniel admitted that he used them for personal use and sale, the jury's verdict as to Tammy does not appear the product of prejudicial overcharging. *See State v. Orgain*, 115 N.M. 123, 125–26, 847 P.2d 1377, 1379–80 (Ct.App. 1993). In light of the foregoing discussion, the evidence was sufficient to support Tammy's conviction for simple possession, and we affirm her conviction.

**CONCLUSION**

{22} Based on the discussion herein, we affirm the conviction of Defendant Tammy Shaulis–Powell. We reverse the conviction of Defendant Daniel Shaulis, and remand to the trial court for further proceedings consistent with this opinion.

{23} **IT IS SO ORDERED.**

HARTZ and SUTIN, JJ., concur.