2004-NMCA-104

96 P.3d 801

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Stephanie MARSHALL, Defendant–**
**Appellant.**

No. 23,596.

Court of Appeals of New Mexico.

June 25, 2004.

Certiorari Denied, No. 28,811,
Aug. 11, 2004.

Patricia A. Madrid, Attorney General, Santa Fe, Max Shepherd, Assistant Attorney General, Albuquerque, for Appellee.

John B. Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, for Appellant.

*OPINION*

BUSTAMANTE, J.

{1} Defendant was found guilty of trafficking methamphetamine by manufacturing, possession of drug paraphernalia, and conspiracy to commit trafficking methamphetamine by manufacturing. The sole issue on appeal is whether Defendant was entitled to a jury instruction on a personal use defense to the trafficking by manufacturing charge. Because we conclude that trafficking by manufacture as defined by the Legislature does not allow for a personal use exception, we affirm the district court's refusal to instruct the jury on this defense.

**BACKGROUND**

{2} The facts are generally not in dispute, and the case went to the jury without any defense witnesses being called and without any testimony from Defendant. The State relied on the testimony of four officers involved with the Otero County Narcotics Enforcement Unit (OCNEU), a federally funded, multi-jurisdictional task force, and on the expert testimony of a forensic chemist from a state crime lab. The State also introduced numerous exhibits related to the methamphetamine lab and precursor materials used in the production of methamphetamine.

{3} Officer Jon Anderson, the supervisor of OCNEU, testified that on January 27, 2002, he received information about possible methamphetamine manufacturing at a residence in Alamogordo, New Mexico. He and other officers went to the residence to do a "knock and talk." The door was answered by Marsha Krasnahill, whom the officers later determined to be the owner or renter of the residence. Officer Anderson received consent to have his deputies look inside the residence as part of their methamphetamine investigation. Defendant was observed in the residence. Almost immediately, a deputy saw what he believed to be a gassing device that is used during the manufacturing process. Officer Anderson ordered everyone out of the residence based on safety concerns, including the possibility that there could be an explosion from hydrochloric acid gas that may be present, or from the potential presence of phosaphine gas.

{4} After everyone exited the residence, Defendant and Krasnahill were taken to the Sheriff's office, where they were interviewed by Sergeant Bennie House and another officer. Sergeant House testified that Defendant gave two different accounts: that she had been summoned to the residence to assist when a problem developed in getting a "final product," and that she was there from start to finish. The essence of her statement was that, while she did not consider herself to be the "cook," she had been at the residence to lend her expertise in exchange for some of the finished product. Meanwhile, a search warrant had been executed the same day. An officer who was certified to handle clandestine laboratories was called to take down the methamphetamine lab. The State presented additional testimony and physical evidence concerning the methamphetamine lab and precursor substances found at the residence and in a nearby vehicle. Because Defendant is not challenging the sufficiency of this evidence, there is no need to set forth these facts in detail.

{5} In closing argument, defense counsel admitted that Defendant was a methamphetamine user. As part of this strategy, Defendant tendered a jury instruction that modified UJI 14–3112 NMRA 2004 (trafficking by manufacturing) to allow for a personal use exception. The district court refused the instruction, and this ruling is now being challenged on appeal.

**DISCUSSION**

**A. Standard of Review**

■ {6} Generally, whether a jury instruction has been properly denied raises a mixed question of law and fact that is reviewed de novo. *See State v. Salazar,* 1997–NMSC–044, ¶ 49, 123 N.M. 778, 945 P.2d 996. Here, however, the availability of a personal use defense to the charge of trafficking by manufacturing involves statutory construction and analysis of the law referred to in a Committee Commentary to UJI 14–3112. Accordingly, we apply a de novo standard of review. *See State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (1995) (noting that statutory interpretation is an issue of law).

## B. Trafficking by Manufacturing

{7} As noted, Defendant's right to have the jury instructed on a personal use defense requires us to consider in the first instance the legislative definition of the offense. In construing the statute, our primary goal is to give effect to the intent of the Legislature. *See State v. Martinez*, 1998–NMSC–023, ¶ 8, 126 N.M. 39, 966 P.2d 747. We do this by giving effect to the plain meaning of the words of statute, unless this leads to an absurd or unreasonable result. *See State v. Wyrostek*, 108 N.M. 140, 142, 767 P.2d 379, 381 (Ct.App.1988). Here, the applicable statutory language is as follows:

A. As used in the Controlled Substances Act [30–31–1 NMSA 1978], "traffic" means the:

(1) manufacture of any controlled substance enumerated in Schedules I through V or any controlled substance analog as defined in Subsection W of Section 30–31–2 NMSA 1978;

(2) distribution, sale, barter or giving away of any controlled substance enumerated in Schedule I or II that is a narcotic drug or a controlled substance analog of a controlled substance enumerated in Schedule I or II that is a narcotic drug; or

(3) possession with intent to distribute any controlled substance enumerated in Schedule I or II that is a narcotic drug or controlled substance analog of a controlled substance enumerated in Schedule I or II that is a narcotic drug.

NMSA 1978, § 30–31–20(A) (1990).

{8} The language of Subsections (2) and (3) would allow a personal use exception: if one can prove that possession is exclusively for personal use, then there can be no distribution, sale, barter or giving away of the controlled substance, nor can there be possession with intent to distribute. Section 30–31–20(A)(2) and (3). The trafficking by manufacture alternative merely requires that one manufacture a controlled substance, with no additional language requiring distribution or intent to distribute. Although Defendant would have us read this distribution language into Section 30–31–20(A)(1), it is well-settled that we do not read language into a statute, especially where the statute makes sense as written. *See State v. Baker*, 116 N.M. 526, 527, 864 P.2d 1277, 1278 (Ct.App.1993). Under Subsection (1), the Legislature looked to the source of the problem with any type of distribution of controlled substances—the person who takes lawful products and turns them into controlled substances. Consequently, it makes sense that the Legislature would criminalize the manufacturing of a controlled substance and not allow a personal use exception in that case.

{9} Having concluded that under Section 30–31–20(A)(1) the manufacture of a controlled substance, without distribution or intent to distribute, is sufficient to commit this particular mode of "trafficking," we consider whether Defendant's personal use argument is supported by the applicable definitional provision in the Controlled Substance Act:

M. "manufacture" means the production, preparation, compounding, conversion or processing of a controlled substance or controlled substance analog by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis and includes any packaging or repackaging of the substance or labeling or relabeling of its container, except that this term does not include the preparation or compounding of a controlled substance:

(1) by a practitioner as an incident to his administering or dispensing of a controlled substance in the course of his professional practice; or

(2) by a practitioner, or by his agent under his supervision, for the purpose of or as an incident to research, teaching or chemical analysis and not for sale.

NMSA 1978, § 30–31–2(M) (2002).

{10} Again, there is nothing in this language to suggest that manufacturing requires distribution or an intent to distribute. To the contrary, the Legislature has not included personal use as one of the exceptions specifically set forth in Section 30–31–2(M). As indicated, the Legislature has specifically excluded the preparation or compounding of controlled substances by practitioners and their agents. Although the

omission of a personal use exception is only indicative of legislative intent, *see State v. Martinez,* 92 N.M. 291, 293, 587 P.2d 438, 440 (Ct.App.1978), it lends further support to the conclusion that the crime of trafficking by manufacturing is committed irrespective of any consideration of whether the manufacturer intended to distribute the controlled substance or keep it for his or her personal use. We are therefore bound by the plain language of the statute. *Cf. State v. Shaulis–Powell,* 1999–NMCA–090, ¶ 19, 127 N.M. 667, 986 P.2d 463 (holding that the plain meaning of Section 30–31–2(M) excludes the act of growing marijuana).

### C. Committee Commentary

■ {11} Perhaps realizing that the structure and language of the statute and its definitional section do not support recognition of a personal use exception, Defendant's argument on appeal is based primarily on the following language in the Committee Commentary to UJI 14–3112, the manufacturing instruction: "The definition of manufacture excepts the preparation or compounding of a controlled substance for the defendant's own use. *See State v. Whitted,* 21 N.C.App. 649, 205 S.E.2d 611, *cert. denied,* 285 N.C. 669, 207 S.E.2d 761 (1974), *cert. denied,* 419 U.S. 1120, 95 S.Ct. 803, 42 L.Ed.2d 820 (1975)." The commentary is not binding on this Court, but we do consider its persuasive value in considering the availability of the personal use instruction. *See State v. McCrary,* 100 N.M. 671, 673, 675 P.2d 120, 122 (1984).

{12} We believe that the committee's reliance on *Whitted* is misplaced for several reasons. First, *Whitted* was overruled by *State v. Childers,* 41 N.C.App. 729, 255 S.E.2d 654, 656–57 (1979), which concluded that the applicable statute did not allow for a personal use exception to trafficking by manufacture unless the manufacturing activity is preparation or compounding. Second, as pointed out in *Childers,* 255 S.E.2d at 656, the North Carolina statute in effect at the time defining "manufacture" included the following language: "except that this term [manufacture] does not include the preparation or compounding of a controlled sub-

stance by an individual for his own use...." *Id.* This exception is not found in New Mexico's statute, Section 30–31–2(M). Third, we note that both the North Carolina statute and the New Mexico counterpart are based on the Uniform Controlled Substances Act (UCSA) § 101(13), 9 (Part II) U.L.A. 19 (1994). The New Mexico statute is virtually identical to the definition found in the UCSA, and the North Carolina statute added a personal use exception for the preparation and compounding of controlled substances.

{13} To the extent that the committee commentary believed that our definition of manufacturing implicitly included a likewise provision, this assumption would be wrong for two reasons. First, as mentioned above, this would impermissibly read language into a statute that makes sense as written. Second, in overruling *Whitted, Childers* construed the exception to include situations where an individual was already in possession of a controlled substance and makes it ready for use or combines it with other ingredients *for* use (such as the baking of marijuana brownies). *Childers,* 255 S.E.2d at 656. The *Childers* court stressed that the exception did not apply in cases where production, propagation, conversion or production of a controlled substance was involved; in those cases, whether the defendant's intent was to distribute the substance or consume it personally is irrelevant. *Id.* at 656–57.

{14} The inapplicability of *Whitted* and the conclusion that the crime of trafficking by manufacturing does not allow for a personal use exception is further supported by the fact that numerous other courts have interpreted variations of the UCSA similar to *Childers. See People v. Pearson,* 157 Mich. App. 68, 403 N.W.2d 498, 499–501 (1987) (holding that its personal use exception was limited to the preparation and compounding of a controlled substance already in existence and citing cases in other jurisdictions that have reached the same conclusion). Because the Legislature has not included a personal use exception in New Mexico's definition of "manufacture," we conclude that there is no such exception and that it was not error for

the district court to refuse Defendant's tendered instruction.

CONCLUSION

{15} For the reasons set forth above, we affirm.

{16} **IT IS SO ORDERED.**

CELIA FOY CASTILLO and IRA ROBINSON, JJ., concur.