2005-NMCA-099

117 P.3d 967

**STATE of New Mexico, Plaintiff–Appellee,**

v.

**David Ray PRATT, Defendant–Appellant.**

**No. 24,387.**

Court of Appeals of New Mexico.

June 14, 2005.

Certiorari Denied, No. 29,322, Aug. 4, 2005.

Patricia A. Madrid, Attorney General, Patricia Gandert, Assistant Attorney General, Santa Fe, NM, for Appellee.

John Bigelow, Chief Public Defender, Cordelia A. Friedman, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

WECHSLER, Judge.

{1} Defendant appeals his conviction of trafficking psilocybin mushrooms by manufacture contrary to NMSA 1978, § 30–31–20(A)(1) (1990) of the Controlled Substances Act (CSA). *See* NMSA 1978, §§ 30–31–1 to 30–31–41 (1972, as amended through 2002). He argues that his conviction should be reversed because the legislature did not intend to punish the act of growing mushrooms as "manufactur[ing]" when it enacted Section 30–31–20(A)(1). We agree and reverse Defendant's conviction. Because we find the Section 30–31–20(A)(1) issue dispositive, we do not reach the other issues Defendant raises on appeal.

### Factual and Procedural History

{2} The facts are not in dispute. On June 6, 2002, police, on information obtained from a confidential informant, obtained and executed a search warrant on Defendant's home. Throughout the house, they found glass mason jars containing psilocybin mushrooms at varying stages of maturity. Some of the jars had psilocybin spores growing on top of a rice cake mixture. The officers also found syringes filled with spores, which were allegedly used to inoculate the rice cake mixture. In the kitchen, the officers found a white styrofoam cooler containing a "bubbling apparatus," which was apparently used by Defendant as a humidifier for growing the psilocybin mushrooms. The machine was "turned on and pumping" when the officers found it. The officers also found "recipes" with instructions on growing psilocybin mushrooms.

A message was written on the cooler stating "Remember to be patient!!!! Pinning might take a few weeks."

{3} After a jury trial, Defendant was convicted of trafficking psilocybin mushrooms by manufacture and possession of drug paraphernalia. Defendant does not appeal the possession conviction. We will address the remaining facts as they pertain to the issue on appeal.

### Applicability of Section 30–31–20(A)(1)

{4} The State argues that Defendant "manufacture[d]" psilocybin mushrooms by growing them artificially using special equipment. Defendant, relying primarily on our holding in *State v. Shaulis–Powell,* 1999–NMCA–090, ¶17, 127 N.M. 667, 986 P.2d 463, argues that the mushrooms "were in a natural state of mushroomness" when they were seized by police and that "assisting a growing plant or a fungus by providing [a] growing medium and water" is not "manufacture" as proscribed by Section 30–31–20(A)(1).

{5} The question of whether Defendant's conduct of artificially growing psilocybin mushrooms falls within the ambit of Section 30–31–20(A)(1) is a legal question subject to de novo review. *See State v. Marshall,* 2004–NMCA–104, ¶6, 136 N.M. 240, 96 P.3d 801; *Shaulis–Powell,* 1999–NMCA–090, ¶17, 127 N.M. 667, 986 P.2d 463. When we interpret a statute, our goal is to give effect to the intent of the legislature. *Marshall,* 2004–NMCA–104, ¶7, 136 N.M. 240, 96 P.3d 801. "We do this by giving effect to the plain meaning of the words of [the] statute, unless this leads to an absurd or unreasonable result." *Id.*

{6} The CSA prohibits, as intentional trafficking, the "manufacture of any controlled substance enumerated in Schedules I through V or any controlled substance analog as defined in Subsection W of Section 30–31–2." Section 30–31–20(A)(1). "Manufacture" is defined in Section 30–31–2(M) in relevant part as:

the production, preparation, compounding, conversion or processing of a controlled

substance or controlled substance analog by extraction from substances of natural origin or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis and includes any packaging or repackaging of the substance or labeling or relabeling of its container.

{7} Section 30–31–20(A)(1) is silent as to its applicability to the act of artificially growing psilocybin mushrooms. However, *Shaulis–Powell* is instructive in deciding this issue. In *Shaulis–Powell,* one defendant was convicted of violating Section 30–31–20(A)(1) by growing eight marijuana plants in his yard. *Shaulis–Powell,* 1999–NMCA–090, ¶¶ 1, 5–6, 127 N.M. 667, 986 P.2d 463. In reversing that defendant's conviction for trafficking by manufacture, we stated that "[t]he plain meaning of 'manufacture' does not include simply growing marijuana. Without more, growing marijuana does not constitute manufacture." *Id.* ¶ 19.

{8} The State seeks to distinguish *Shaulis–Powell* on its facts by arguing that: (1) mushrooms are different from marijuana plants, which were at issue in *Shaulis–Powell,* and (2) the mushrooms found in Defendant's possession were not in their natural state. *See id.* (noting that the marijuana plants seized from the defendant "were growing in their natural state"). In making these arguments, the State relies primarily on the testimony at trial of its expert witness.

{9} The witness, a forensic scientist with the Minnesota Bureau of Criminal Apprehension Forensic Science Laboratory, testified that "Mushrooms are fungi, and so they are different from plants [in] that they don't have seeds; they have spores that they start out with.... [S]pores are ... the seeds of the mushroom; they're the reproductive cells." The witness also stated that the four stages that make up the life cycle of the mushroom are the spores, the mycelium, the primordia, and the mature fruit. The witness detailed an experiment she conducted in an attempt to duplicate the process Defendant used to grow psilocybin mushrooms. She prepared a substrate using distilled water, brown rice powder, and vermiculite. She placed this mixture into glass jars and inoculated the substrate with psilocybin mushroom spores she purchased legally from an advertisement in *High Times Magazine.* The witness stated that the mushroom spores were legal because they did not contain psilocybin. However, she detected psilocybin at the "mycelium knot" stage of mushroom development during her experiment. The witness also stated that the process is labor intensive, and, if not followed carefully, the mushrooms will not grow. Based on this evidence, the State argues that Defendant "manufactured" mushrooms as defined by Section 30–31–20(A)(1) and Section 30–31–2(M).

{10} Although *Shaulis–Powell* noted that the marijuana plants at issue "were growing in their natural state when the officers seized them," we based our holding in the case on the statutory definition of "manufacture." *Shaulis–Powell,* 1999–NMCA–090, ¶ 19, 127 N.M. 667, 986 P.2d 463. We stated that "[e]ven if growing marijuana could be considered 'production' under the statute, 'production' is modified by the phrase 'by extraction from substances of natural origin or independently by means of chemical synthesis.'" *Id.* The same statutory analysis applies in this case. We do not agree with the State that Defendant's actions met the chemical synthesis requirement of "manufacture" by "[u]sing a specialized process [thereby manufacturing] illegal ... mushrooms from the legal spores ... received in the mail." This argument is controverted by the State's own expert witness who testified that "spores are ... the seeds of the mushroom" and that the drug was produced naturally in the mushrooms at the mycelium knot stage. Because there is no evidence that Defendant engaged in "extraction from substances of natural origin or ... chemical synthesis" as defined by Section 30–31–2(M), his acts of cultivating or growing mushrooms, even if by artificial means, are not prohibited by Section 30–31–20(A)(1). To interpret Section 30–31–20(A)(1) otherwise, as the State suggests, would require us to read language into the statute that is not there. *See Marshall,* 2004–NMCA–104, ¶¶ 10, 13, 136 N.M. 240, 96 P.3d 801 (refusing to read a personal use exception into the CSA, reasoning that to do

so "would impermissibly read language into a statute that makes sense as written").

{11} Our holding is also supported by an analysis of the federal counterpart to Section 30–31–20(A)(1), 21 U.S.C. § 841(a)(1) (2000) of the Federal Drug Abuse Prevention and Control Act (federal act). *See State v. Carr*, 95 N.M. 755, 760, 626 P.2d 292, 297 (Ct.App. 1981) (recognizing that the CSA is patterned after the federal act and relying on federal interpretation to the extent that the statutes are similar), *overruled on other grounds by State v. Olguin*, 118 N.M. 91, 98, 879 P.2d 92, 99 (Ct.App.1994). The federal act, in pertinent part, proscribes any person from knowingly or intentionally manufacturing, distributing, dispensing, or possessing "with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1). Its definitional section, which is virtually identical to Section 30–31–2(M), defines "manufacture" in pertinent part as:

> the production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly or by extraction from substances of natural origin, or independently by means of chemical synthesis or by a combination of extraction and chemical synthesis, and includes any packaging or repackaging of such substance or labeling or relabeling of its container.

21 U.S.C. § 802(15) (2000). However, the federal act specifically includes a separate definition of "production" as the "planting, cultivation, growing, or harvesting of a controlled substance." 21 U.S.C. § 802(22); *see also United States v. Klein*, 850 F.2d 404, 405 (8th Cir.1988) (affirming the defendant's conviction of the "manufacture" of marijuana when the defendant grew ninety-four marijuana plants in the basement of his home using fluorescent lights, light fixtures, a heater, planting pots, and soil testing equipment). Because the CSA is patterned after the federal act, we believe the legislature acted intentionally when it omitted a similar definition of "production," criminalizing as manufacture the "planting, cultivation, growing, or harvesting of a controlled substance," from the CSA. 21 U.S.C. § 802(22); *see also State v. Bennett*, 2003–NMCA–147, ¶ 11, 134

N.M. 705, 82 P.3d 72 ("We presume that the legislature knows the law when enacting a statute.").

*Conclusion*

{12} Because Defendant's conduct did not fall within the ambit of Section 30–31–20(A)(1), we reverse his conviction. We remand for proceedings consistent with this opinion.

{13} **IT IS SO ORDERED.**

WE CONCUR: LYNN PICKARD and CELIA FOY CASTILLO, Judges.