STATE V. SAVANNAH

This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**STATE OF NEW MEXICO,**
**Plaintiff-Appellant,**
**v.**
**SAVANNAH S.,**
**Child-Appellee.**

Docket No. A-1-CA-37092
COURT OF APPEALS OF NEW MEXICO
April 18, 2019

APPEAL FROM THE DISTRICT COURT OF LEA COUNTY, Gary L. Clingman, District Judge

**COUNSEL**

Hector H. Balderas, Attorney General, Santa Fe, NM, Jane A. Bernstein, Assistant Attorney General, Albuquerque, NM, for Appellant

Bennett J. Baur, Chief Public Defender, Caitlin C.M. Smith, Assistant Appellate Defender, Santa Fe, NM, for Appellee.

**JUDGES**

MEGAN P. DUFFY, Judge. WE CONCUR: M. MONICA ZAMORA, Chief Judge, JULIE J. VARGAS, Judge

**AUTHOR:** MEGAN P. DUFFY

**MEMORANDUM OPINION**

**DUFFY, Judge.**

**{1}** The State appeals the district court's order suppressing incriminating statements made by Savannah S. (Child), who was sixteen years old at the time, during a traffic stop, as well as marijuana subsequently found in her purse. We affirm.

**BACKGROUND**

**{2}** On April 30, 2017, at about 7:00 p.m., Officer Verdugo stopped a vehicle driven by a nineteen-year-old female in which Child was a passenger. Officer Verdugo noticed a strong odor of marijuana emitting from the vehicle and asked the driver for consent to search the vehicle. Officer Verdugo separated the driver and Child, who remained inside the vehicle, and after obtaining the driver's consent to search, returned to the vehicle and engaged in the following exchange with Child:

| | |
|---|---|
| Officer Verdugo: | Okay [Child], here's the thing, I smell marijuana inside the vehicle. |
| Child: | Huh? |
| Officer Verdugo: | I smell marijuana inside the vehicle. |
| Child: | Oh. |
| Officer Verdugo: | Okay, on my first approach, on my second approach. Okay since she is the driver of the vehicle, she has given me consent to search the vehicle. |
| Child: | Oh, okay. |
| Officer Verdugo: | Is there anything inside the vehicle that belongs to you? |
| Child: | Um. |
| Officer Verdugo: | And, whatever you have, is it okay if I search it? |
| Child: | I'm a minor. |
| Officer Verdugo: | You're a minor? |
| Child: | Yes. |
| Officer Verdugo: | Okay. How old are you? |
| Child: | Sixteen. |
| Officer Verdugo: | You're sixteen? Okay. What belongs to you and then we'll go from there, okay? |

**{3}** Child began reaching around and after about a minute, Officer Verdugo asked her what she was looking for. She responded, "[M]y little bag." After Child located the bag, Officer Verdugo said, "[S]ince it is inside the vehicle, ok, just for my safety. I do not know what's in there, we're going to leave it there, ok? Also I would like if you could call your mom or your dad." He instructed Child to set her purse down on the bumper of the car, and Child complied.

**{4}** While Child was on her cell phone, Officer Verdugo explained the situation to a second officer who had arrived at the scene, including Child's age and that Child had identified the purse as hers. After several minutes, Officer Verdugo said to Child, "If that's not your mom or your dad, for my safety, I'd rather you hang up please." Child ended the call a few seconds later.

**{5}** Officer Verdugo walked back over to Child and instructed her to write down her identifying information, including her address, social security number, and phone number. The other officer informed Officer Verdugo that he could question Child without

her parents being present as long as he informed her of her rights. Officer Verdugo then read Child her rights:

| | |
|---|---|
| Officer Verdugo: | Okay so here's what I'm going to do, okay. Since you are a minor and we can't get your parents here, okay, I'm just going to read you your rights, okay, since you're a minor. You have the right to remain silent. Anything you say can and will be used against you in court. You have the right to consult with an attorney and have an attorney present during questioning. If you can't afford an attorney, one can be provided to you before questioning at no cost. Do you understand these rights? |
| Child: | Yes, sir. |
| Officer Verdugo: | With these rights in mind, do you wish to speak to me now? |
| Child: | If I may ask, can I ask why? |
| Officer Verdugo: | Like I said, you're inside the vehicle, okay, and I smell marijuana. Okay? |
| Child: | Oh, okay. So— |
| Officer Verdugo: | That's why I'm just reading you your rights, okay? |
| Child: | Oh, okay, sorry, okay, sorry. |
| Officer Verdugo: | Because usually we have the parents be here, so that's why I'm reading you your rights, okay, do you understand your rights? |
| Child: | Yes, sir. Now. |
| Officer Verdugo: | Do you wish to speak to me now? |
| Child: | Yes. |
| Officer Verdugo: | Okay. Since that [gesturing to Child's purse on the bumper] is inside the vehicle, I would like to go through that as well. |
| Child: | Oh. Okay. |
| Officer Verdugo: | Okay? Is that okay with you? |
| Child: | Um, not really. |
| Officer Verdugo: | Because there it is inside the vehicle. |
| Child: | And I have— |
| Officer Verdugo: | Well, the thing is if not, you're going to leave it in there? Okay? Because you're not going to be able to take it. |
| Child: | Oh, really? |
| Officer Verdugo: | Yes ma'am. |
| Child: | Well— |
| Officer Verdugo: | Like I said, just you bringing it out, it smells like marijuana coming from in there. |
| Child: | Um. Oh. |
| Officer Verdugo: | Okay. Like I said, I'm just telling you, okay. So it's |

|              |                                                                 |
|--------------|-----------------------------------------------------------------|
|              | up to you if you give me consent or not. If not, . . . I would apply for a search warrant, okay, I'm just telling you, okay? I cannot force you to let me. |
| Child:       | Yes, sir.                                                       |
| Officer Verdugo: | I'm just giving—telling you by experience.                  |
| Child:       | Well, if it's—I would rather just make it the easiest.          |
| Officer Verdugo: | Okay.                                                       |
| Child:       | Um, can I say that there is marijuana in there?                 |
| Officer Verdugo: | Okay, I appreciate you letting me know. Regardless, I would like to go through it, just for my safety. |

**{6}** Officer Verdugo found a small amount of marijuana in the purse. Child was arrested and charged with possession of one ounce or less of marijuana in violation of NMSA 1978, Section 30-31-23(A) (2011), a petty misdemeanor.

**{7}** Child moved to suppress her statements and the marijuana, arguing that she had not knowingly, intelligently, and voluntarily waived her right to remain silent as a result of overreaching tactics by the police. Child argued that she "was not informed of her rights prior to the initial questioning by Officer Verdugo" and that her waiver was involuntary as a result of Officer Verdugo's "threat" to get a warrant.

**{8}** The district court conducted a hearing at which the video of the traffic stop was introduced and played in full. The district court granted the motion to suppress, finding as follows:

> Officer Verdugo explained to . . . Child that [she] had little, if any, option in that if she didn't allow him to search, he was going to go get a search warrant. You can say that to adults, but I think rendering a child under these circumstances with basically no options violates their rights under the Children's Code, so [the] order will be granted.

**{9}** The written order read, "All statements made by [Child] when questioned after being threatened with search regardless of her wishes, and any evidence gained therefrom, are suppressed pursuant to NMSA [1978, Section] 32A-2-14 [(2009)] and relevant case law thereto."

## DISCUSSION

**{10}** On appeal, the State argues that suppression was not indicated in this case because Officer Verdugo properly complied with Child's rights under the Children's Code and that Child voluntarily waived her right to remain silent. We review de novo the district court's application of the law to the facts in reviewing a motion to suppress inculpatory statements. *See State v. Gutierrez*, 2011-NMSC-024, ¶ 7, 150 N.M. 232, 258 P.3d 1024. "[W]e accept the factual findings of the district court unless they are clearly erroneous, and view the evidence in the light most favorable to the district court's

ruling. The ultimate determination of whether a valid waiver of *Miranda* rights has occurred, however, is a question of law which we review de novo." *Id.* (alteration, internal quotation marks, and citation omitted)

**{11}** Before a child's statement or confession may be introduced at trial, the state must demonstrate that the child made a knowing, intelligent, and voluntary waiver of his or her constitutional right to remain silent. NMSA 1978, § 32A-2-14(C), (D); *see State v. Antonio T.*, 2015-NMSC-019, ¶¶ 3, 19, 352 P.3d 1172. "The test for reviewing a juvenile's waiver of rights is identical to that of an adult's and is based on the totality of the circumstances." *State v. Lasner*, 2000-NMSC-038, ¶ 6, 129 N.M. 806, 14 P.3d 1282. With respect to children, we have interpreted the Children's Code as codifying the factors relevant to the totality of the circumstances analysis. *Id.* ¶ 7. Section 32A-2-14(E) requires that, in determining whether the child's waiver was knowing, intelligent, and voluntary, the district court must consider:

    (1)    the age and education of the respondent;

    (2)    whether the respondent is in custody;

    (3)    the manner in which the respondent was advised of the respondent's rights;

    (4)    the length of questioning and the circumstances under which the respondent was questioned;

    (5)    the condition of the quarters where the respondent was being kept at the time of being questioned;

    (6)    the time of day and the treatment of the respondent at the time of being questioned;

    (7)    the mental and physical condition of the respondent at the time of being questioned; and

    (8)    whether the respondent had the counsel of an attorney, friends or relatives at the time of being questioned.

**{12}** When reviewing voluntariness in this case, we must consider whether Child's admission was the product of coercion, as Child argues. *See Gutierrez*, 2011-NMSC-024, ¶ 7 ("Both the Fifth Amendment protection against self-incrimination and the Fourteenth Amendment right to due process negate admissibility of a confession elicited through intimidation, coercion, deception, assurances, or other police misconduct that constitutes overreaching." (internal quotation marks and citation omitted)); *State v. Martinez*, 1999-NMSC-018, ¶ 14, 127 N.M. 207, 979 P.2d 719 (stating that a waiver must be made by "free and deliberate choice rather than [by] intimidation, coercion, or deception" (internal quotation marks and citation omitted)); *State v. Fekete*, 1995-

NMSC-049, ¶ 48, 120 N.M. 290, 901 P.2d 708 ("Whether 'voluntary' is examined in the context of the Fifth Amendment (waiver) or the Fourteenth Amendment (due process), the benchmark is the absence of governmental coercion or police overreaching." (internal quotation marks and citation omitted)). Coercion occurs when a child's will has been overborne and her capacity for self-determination was critically impaired. *State v. Evans*, 2009-NMSC-027, ¶ 33, 146 N.M. 319, 210 P.3d 216. "On a claim that police coerced a statement, the prosecution bears the burden of proving by a preponderance of the evidence that a defendant's statement was voluntary." *Id.* ¶ 34.

**{13}**  In this case, Child was sixteen years old and under an investigatory detention. While the record does not reveal her educational level, we note that when Officer Verdugo began to question her, Child immediately informed him that she was a minor and refused consent to search the first time he made the request, indicating that she had some understanding of her rights. Officer Verdugo spoke to Child in a polite, calm, and professional manner and gave a full *Miranda* warning. Officer Verdugo asked Child if she understood her rights, and she replied without hesitation that she did. While Officer Verdugo gave Child a chance to call her parents, she was unable to reach them. She was also separated from and unable to speak to her friend, the driver of the vehicle, throughout her entire interaction with the officer. The first time Officer Verdugo asked Child if he could search her bag, she replied, "Um, not really." Officer Verdugo then informed her that she would not be able to take her bag with her and that if she did not let him search it, he would "apply for a search warrant." He followed up that statement by reminding her that he could not "force her" to give consent and was just "telling [her] by [his] experience." She agreed to the search, stating that she "would rather just make it the easiest."

**{14}**  On these facts, the district court concluded that the totality of the circumstances rendered Child's statement involuntary, stating at the hearing that "rendering a child under these circumstances with basically no options violates [her] rights under the Children's Code." We defer to the district court's findings of fact so long as they are supported by substantial evidence. *State v. Jason L.,* 2000-NMSC-018, ¶ 10, 129 N.M. 119, 2 P.3d 856. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *State v. Filemon V.*, 2018-NMSC-011, ¶ 17, 412 P.3d 1089 (internal quotation marks and citation omitted). "The fact that another district court could have drawn different inferences on the same facts does not mean this district court's findings were not supported by substantial evidence." *Jason L.*, 2000-NMSC-018, ¶ 10.

**{15}**  Giving proper deference to the district court, we conclude there was substantial evidence to support a finding that Child's admission was involuntary. Child demonstrated that she understood her rights and asserted them when Officer Verdugo first asked if he could search her bag. It was only after Officer Verdugo told Child, in essence, that she had no choice but to let him search the purse because he would be able to get a search warrant that she acquiesced to the search. "[C]onsent is not voluntary if it is a mere acquiescence to a claim of lawful authority." *State v. Shaulis-Powell*, 1999-NMCA-090, ¶ 10, 127 N.M. 667, 986 P.2d 463. Officer Verdugo's

statements had the effect of an unequivocal assertion that he would eventually search Child's purse. *See State v. Davis*, 2013-NMSC-028, ¶ 23, 304 P.3d 10 ("When an officer unequivocally asserts that he will be able to obtain a warrant, a defendant's belief that refusal to consent would be futile demonstrates involuntary consent."). Child's statement that she "would rather just make it the easiest" after she had already refused consent once is an indication that she believed further refusal would be futile and that her initial will to refuse consent had been overborne. *See State v. Pierce*, 2003-NMCA-117, ¶ 21, 134 N.M. 388, 77 P.3d 292 (finding that the defendant's capitulation to officers' requests to search after previously denying consent was evidence that the consent was a result of coercion). In reaching our conclusion, we acknowledge that the officer engaged in a professional, calm, and polite interaction with Child, and note only that our Supreme Court instructs that "[q]uestioning officials must exercise greater vigilance with child suspects due to their lack of experience, perspective, and judgment, and their diminished ability to recognize and avoid various choices detrimental to them." *Filemon V.*, 2018-NMSC-011, ¶ 21 (alteration, internal quotation marks, and citation omitted); *see also State v. Rivas*, 2017-NMSC-022, ¶ 31, 398 P.3d 299 (noting that "[c]onsideration of [the Children's Code] factors refines for juvenile waivers the more generally-applicable totality-of-the-circumstances inquiry, and emphasizes some of the circumstances that may be particularly relevant for a juvenile, such as the presence of a relative or friend" (internal quotation marks and citation omitted)).

**CONCLUSION**

**{16}** We affirm the district court.

**{17}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**M. MONICA ZAMORA, Chief Judge**

**JULIE J. VARGAS, Judge**