This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

      Plaintiff-Appellee,

v.                               **No. A-1-CA-36312**

**ROBERT L. LOVATO,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF TAOS COUNTY**
**Jeff McElroy, District Judge**

Hector H. Balderas, Attorney General
Eran Sharon, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**MEDINA, Judge.**

**{1}** Defendant Robert L. Lovato appeals from his conviction by conditional plea contending that the district court erred in denying his motion to suppress. We affirm.

**BACKGROUND**

**{2}** Defendant was charged with one count of possession of a controlled substance (methamphetamine) contrary to NMSA 1978, Section 30-31-23(A) (2011, amended 2019) and one count of possession of marijuana (one ounce or less) contrary to Section 30-31-23(A)(B)(1). Defendant subsequently filed a motion to suppress the evidence

gathered from a warrantless search of his place of business. Defendant alleged that the consent to search that he provided to the officers was involuntary because it was given based on the "hope of reward of not being arrested and not charged by the [district attorney]'s office, which [he claims] is a promise of leniency and improper inducement" and upon the threat that if consent was not given, the agent would obtain "a search warrant from the court without problem" and arrest Defendant if drugs were found. The State filed a response arguing that Defendant's consent was voluntary. The State argued that this Court addressed a similar factual scenario in *State v. Shaulis-Powell*, 1999-NMCA-090, 127 N.M. 67, 986 P.2d 463, in which we held that an officer's proposal to forgo arrest in exchange for a defendant's consent was a lawful incentive. In support of its response, the State attached two exhibits: (1) a CD containing a recording of the encounter between New Mexico State Police (NMSP) Agent Joey Gallegos and Defendant prior to the warrantless search; and (2) a transcription of the recording.

**{3}** The transcript of the encounter and the record reveals that on May 21, 2014, NMSP Agents Gallegos and Alexander Rodriguez, along with Lieutenant Edwardo Martinez and possibly one or two other officers traveled to what they believed to be Defendant's residence in Costilla, New Mexico. Once there they conducted a knock-and-talk.

**{4}** Upon making contact with Defendant, Agent Gallegos informed Defendant that the reason the officers were making contact was because they had been receiving "complaints and information that you've been selling drugs." Additionally, Agent Gallegos informed Defendant that, "We've actually been watching you for a little bit." Upon relaying this information, Agent Gallegos presented two options to Defendant:

> Alright well, we can do one of two things. [W]e can—right now I believe I have enough probable cause to obtain a search warrant for your place. For this area here and for your place back at home to search for narcotics. [I]f I petition in courts I'm granted a search warrant then we're going to take, if you do have any drugs or whatever in your places we are going to seize them and you'll be arrested. The second option is if your [sic] willing to work with us and cooperate with us we're willing to do the same with you. If you voluntarily turn over any drugs that you may have or anything you may have and allow us to search voluntarily, it's free and voluntarily we don't consent we will not arrest you and instead what we'll do is just submit a report to the [district attorneys]. If they decide they want to charge you that['s] up to them, that's not up to us. But we're not going to charge or arrest you today. We just take the drugs and leave. You have my word that you don't get arrested.
>
> **. . . .**
>
> Those are the two options you have. If you['re, if you['re] willing to volunteer for us to search the area here for that so that we can see and people have been calling us and complaining about you for a while.

Aware of the complaints, Defendant responded:

> Oh yeah. People have been saying that . . . . They're just a bunch of haters. They burned my house down, they torched it and burned it down to the ground you know what I mean. And it's always every time that [I] try something new and I start doing good they always try to bring me down some way or another.

{5}     As the interaction between Agent Gallegos and Defendant continued, Defendant asked Agent Gallegos to repeat the options. Agent Gallegos replied:

> [I]f you voluntarily give us consent to search your place and turn over any dope that you may have um then we just take the drugs and we don't arrest you. We don't charge nobody today. We just submit a report. Basically what we do is we take the dope and go back to the office and we'll write a report up and send it to the [d]istrict [a]ttorneys. If they decide they want to charge you that's up to them. Sometimes they do, sometimes they don't.

{6}     Defendant then asked, "The second choice is I go to jail, or what?" to which Agent Gallegos responded:

> No, the second choice is, I believe I have enough probable cause to obtain a search warrant for your place. What that entails is, is that we kick everybody out, we secure the residence, we kick everybody out. And . . ., go back to the office and petition for a search warrant, I will tell you this, I've done over, I've petitioned for over 222 search warrants and I've never been denied one. [W]e get a search warrant, we search the place and then any drugs that you have we take with us and you will be arrested. You will be charged today. So basically if you want to work with us and volunteer us, allow us to search the place it's your own free and voluntary consent. It's of your own free will. It's your choice. I'm not threatening you or anything. I'm just telling you the options of what I intend to do. Basically we just take the dope and leave. You won't be arrested. We don't arrest you today.

{7}     Agent Gallegos asked Defendant what "dope" he had. Defendant replied that he smokes a little "weed" and that he had a little "weed" in his house. Agent Gallegos again asked Defendant if he would be willing to consent to a search of his house and informed Defendant that he would be present during the search the entire time. Defendant responded "I guess, but I just don't understand why?" Agent Gallegos again stated that the NMSP had received information that Defendant was selling drugs and, as a result, that his house had been under surveillance. And he told Defendant that "Well we arrested—There's been a few people that have been arrested that say they've bought dope from you." Defendant replied, "Maybe weed?"

**{8}** Agent Gallegos asked Defendant if he had any other drugs besides marijuana in the house. Defendant stated that he cooks and uses crystal meth and probably had about two or three grams in the premises.

**{9}** When asked if he would "be willing to give [the officers] consent to search both places so that [they could] retrieve those drugs[,]" Defendant responded that he would "like to walk through to[o]." Officer Gallegos replied that he understood but would also need to check the "rest of the place just to make sure." Defendant responded, "Go ahead."

**{10}** Officer Gallegos told Defendant that Defendant could withdraw his consent at any time and again asked:

> So would you allow, like I said, would you allow us to search this place and that place and we can get the weed and you can show —need to check it and make sure there['s] no more than what [you're] saying. Just that way we can document[] everything and make sure we . . . cross our T's and dot our [I]'s. Are you cool with that?

Defendant responded "Yeah. I'm cool. I'll tell you where it's at."

**{11}** Two witnesses testified at the hearing on the motion to suppress: Denis Romero, an investigator hired by the defense, and Defendant. According to Romero, the officers told him they were not wearing tactical type gear when they went to Defendant's home. Agent Gallegos told Romero he had obtained over 400 warrants and his applications for search warrants had never been denied. Agent Gallegos also told Romero that he employs the same process with everyone when seeking consent to search.

**{12}** Romero further stated that when he reviewed the discovery in the case, he did not find anything indicating that there were complaints about Defendant dealing or using methamphetamine or corroborating the complaints of Defendant using or dealing in methamphetamine. Importantly, there was no indication the officers handcuffed or physically abused Defendant. After Romero's testimony, the district court asked defense counsel if the officers stated during their interviews whether they had corroboration of the complaints of Defendant's drug dealing or that they lacked probable cause. Defense counsel responded "no they don't say that. They just don't say they ever did anything." The district court clarified "they weren't asked about it?" Defense counsel conceded the officers weren't asked about corroborating information or probable cause. Ultimately, the district court determined that Romero's testimony was more pertinent to the issue of timeliness than the issue of suppression[1].

**{13}** Defendant testified that five armed agents arrived but that they did not have their guns pointed at him, and that they treated him respectfully. He testified that two officers spoke to him.

---

1 The State's response include a challenge to the timeliness of Defendant's motion to suppress under Rule 5-212 NMRA.

**{14}**     When asked what would have happened if he would have been locked out of his residence while the officers obtained a search warrant Defendant first responded that he already had a bad reputation and did not know. When asked if the threat to lock him out of the residence had an effect on his willingness to provide consent to the search, Defendant responded that it had a big effect and that he would not have consented otherwise.

**{15}**     After testimony concluded, the district court asked the parties if the court could accept the agent's statements to Defendant that the agents: had received complaints from neighbors; had been conducting surveillance on the house; and had enough evidence to support a search warrant, or whether the district court needed "outside corroboration." The State responded "there isn't enough information on that CD for you to make a determination they had enough for a search warrant . . . . You would have to hear it from the officers but again I understand where the . . . court is going." The district court took the matter under advisement.

**{16}**     On September 8, 2015, the district court issued a letter ruling in which it referred to the recording and transcripts of the officers' interaction with Defendant and found the "testimony of the officers convincing that there was probable cause to obtain a warrant to search [D]efendant's residence at the time they interviewed [D]efendant and sought his consent to search." The district court found "that the officers had statements of informants as to the activity at the residence and additional information from observations at the residence" and that an affidavit presented to a magistrate would likely have resulted in a search warrant to search Defendant's residence. Based on the transcript, the district court concluded that the officers "did not promise [D]efendant leniency in exchange for [his] consent. Instead, the officers asked for consent with the promise that the officers would not arrest [D]efendant in the event contraband was discovered during a consensual search." The district court further found that the case was similar to *Shaulis-Powell*, and based on that case, Defendant's consent was valid. Finally, the district court found that the agent's second option—to secure the premise and have the occupants vacate the premise to be searched pending application for search warrant—was not sufficiently coercive so as to invalidate Defendant's consent. The court subsequently entered an order denying Defendant's motion to dismiss. Defendant then agreed to plea guilty reserving the right to appeal the district court's suppression ruling.

## DISCUSSION

**{17}**     Defendant contends that his consent was not voluntarily given. The State responds that Defendant's case is analogous to *Shaulis-Powell*, and that Defendant's consent was voluntarily given. We agree the facts in this case are analogous to *Shaulis-Powell* but affirm the district court's denial of the motion to suppress on different grounds.

## STANDARD OF REVIEW

**{18}** "In reviewing a [district] court's denial of a motion to suppress, [appellate courts] observe the distinction between factual determinations[,] which are subject to a substantial evidence standard of review and application of law to the facts, which is subject to de novo review." *State v. Hubble*, 2009-NMSC-014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (alteration, internal quotation marks, and citation omitted). "[Appellate courts] view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings." *State v. Urioste*, 2002-NMSC-023, ¶ 6, 132 N.M. 592, 52 P.3d 964.

**Defendant's Consent to the Warrantless Search of His Business Was Not Gained by Coercion or Unlawful Incentive**

**{19}** Warrantless searches are presumed to be unconstitutional under the Fourth Amendment of the United States Constitution and Article II, Section 10 of the New Mexico Constitution. *See State v. Rowell*, 2008-NMSC-041, ¶ 10, 144 N.M. 371, 188 P.3d 95 ("Any warrantless search analysis must start with the bedrock principle of both federal and state constitutional jurisprudence that searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable, subject only to well-delineated exceptions." (emphasis, internal quotation marks, and citation omitted)). The state has the burden to prove facts that justify a warrantless search. *See State v. Paul T.*, 1999-NMSC-037, ¶ 10, 128 N.M. 360, 993 P.2d 74.

**{20}** "One of the settled exceptions to the warrant requirement is consent." *State v. Flores*, 2008-NMCA-074, ¶ 12, 144 N.M. 217, 185 P.3d 1067. "The voluntariness of a consent to search is initially a question of fact for the [district] court." *State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. The voluntariness of consent involves a three-tiered analysis: "(1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *State v. Davis*, 2013-NMSC-028, ¶ 14, 304 P.3d 10 (internal quotation marks and citation omitted). "Ultimately, the essential inquiry is whether [the] defendant's will ha[d] been overborne." *Id.* (alteration, internal quotation marks, and citation omitted).

**{21}** Defendant does not argue that his consent was not specific and unequivocal but rather that it was given as a result of being "threatened" in a "highly coercive atmosphere." Defendant's claim of threats, coercion, and duress are based on the following contentions: (1) the officers lacked probable cause to obtain a search warrant; (2) his consent was obtained by means of a promise that he would not be arrested; and (3) the presence of five armed agents created a highly coercive atmosphere. We address each in turn.

**1.     The Assertion That a Search Warrant May Be Obtained Is Not Coercive**

**{22}** Defendant contends his consent was not voluntary because the agents assured him they could secure a search warrant. We addressed this precise issue in *Shaulis-*

*Powell* where we held that, "[C]onsent is not voluntary if it is a mere acquiescence to a claim of lawful authority." 1999-NMCA-090, ¶ 10. However, we distinguished between statements made based on an officer's assessment of the situation and unequivocal assertions that a warrant would be obtained. When an officer's statement about a warrant is "simply the officer's assessment of the situation" and not an unequivocal assertion that they would be able to get a warrant, consent may still be voluntary. *Id.* ¶ 11; *see Davis*, 2013-NMSC-028, ¶ 24 (affirming that "when an officer simply expresses his assessment of the situation, that explanation does not prevent a defendant from insisting that a warrant be obtained prior to searching"). In cases where an officer unequivocally asserts that a search warrant will be obtained, "as long as there is probable cause to support a warrant, the officer can inform the suspect that he or she will get a warrant without invalidating a subsequent search." *Shaulis-Powell*, 1999-NMCA-090 ¶ 12.

**{23}** The State asserted in its response to Defendant's motion to suppress, and reasserts on appeal, that this case is controlled by our reasoning and holding in *Shaulis-Powell*. Defendant contends that *Shaulis-Powell* is inapposite because the officers lacked the probable cause necessary to make their threat of a warrant legitimate. We agree that this case turns on the applicability of *Shaulis-Powell*. Having reviewed the evidence presented during the suppression hearing, we conclude that *Shaulis-Powell* is controlling and affirm.

**{24}** In *Shaulis-Powell*, law enforcement officers followed up on a tip from a citizen informant that marijuana was being grown at a residence. *Id.* ¶ 2. After observing the backyard and seeing what they believed to be marijuana plants, the officers asked the owners for consent to search the premises. *Id.* ¶¶ 2-4. One of the defendants asked if the officers had a warrant, which they did not. *Id.* ¶ 4. An officer informed the defendant "that he felt that he had enough information to be able to secure [a warrant,]" and presented the defendants with two options. *Id.* ¶ 4. The officers stated that if the defendants consented to the search the officers would confiscate any marijuana they found but would not make arrests, but if they needed to seek a warrant it would require more officers to secure the premises, and if they found marijuana the defendants would be arrested. *Id.* The defendants consented to the search and eight marijuana plants were confiscated. *Id.* ¶ 5. The district court denied the defendant's motion to suppress, concluding that the consent was voluntarily given. *Id.* ¶ 8.

**{25}** On appeal, one defendant argued "that because the officers told him that they had enough evidence to obtain a search warrant, his refusal would have been futile." *Id.* ¶ 10. Unpersuaded, we reasoned that "the testimony of the officers at the suppression hearing demonstrate[d] that they did not assert unequivocally that they would be able to obtain a warrant[,]" and therefore held "that the officer's comment that he felt he could get a warrant did not rise to the level of coercion or duress." *Id.* ¶ 11. We further concluded that, "[e]ven if the officer's comment could be construed as an assertion that he could get a warrant . . . as long as there is probable cause to support a warrant, [an] officer can inform the suspect that he or she *will* get a warrant without invalidating subsequent consent." *Id.* ¶ 12 (emphasis added). Thus, we held that "[i]f a warrant is

obtainable, [a] defendant['s] privacy rights under the Fourth Amendment are not violated." *Id.* ¶ 12. Finally, analyzing the defendant's claim of consent by duress, we recognized "it is commonly held that where the officer's 'threat' is to perform some legal action[,] . . . it does not invalidate arrest." *Id.* ¶ 14.

**{26}** In *Shaulis-Powell*, we distinguished between unequivocal assertions that a search warrant would be obtained and assessments of the situation based on the officer's belief. Although we expounded on the former scenario, our holding in *Shaulis-Powell*, was firmly based on the latter. Through the officers' testimony we determined that, "they did not assert unequivocally that they would be able to obtain a warrant." *Id.* ¶ 11. We focused on the use of terms such as "felt" or "believed" in the officers' testimony to support our determination. The transcript of the interaction between Agent Gallegos and Defendant provides similar insight as that of the testimony in *Shaulis-Powell*, which we review de novo. *See State v. Martinez*, 2018-NMSC-007, ¶ 12, 410 P.3d 186 ("[W]here the issue to be determined rests upon interpretation of documentary evidence, [the appellate court] is in as good a position as the [district] court to determine the facts and draw its own conclusions." (internal quotation marks and citations omitted)).

**{27}** Turning to the transcript in this case, Agent Gallegos stated, "right now I believe I have enough probable cause to obtain a search warrant for your place. . ." Agent Gallegos continues his statement to Defendant by explaining what will happen if his petition to the court is granted. When explaining the options to Defendant a second time, Officer Gallegos again states, "I believe I have enough probable cause to obtain a search warrant for your place. . . . And . . ., [I will] go back to the office and petition for a search warrant[.]" Here, as in *Shaulis-Powell*, Agent Gallegos merely provided an assessment of the situation. His statements are couched as beliefs and he acknowledges that a petition will need to be made to the court. Even when considering Agent Gallegos' boast that, "I've petitioned for over 222 search warrants and I've never been denied one," his statements do not necessarily indicate that obtaining a warrant would have been a certainty. Accordingly, we hold that Agent Gallegos' statements to Defendant regarding his assessment of the situation did not rise to the level of coercion or duress.

**{28}** Because Agent Gallegos' statements were only assessments of the situation and not an unequivocal assertion, it is unnecessary to reach a determination on the sufficiency of evidence to support probable cause for a search warrant. In *Shaulis-Powell* this Court conducted a probable cause analysis only to illustrate the evaluation required if our holding on the officer's statements had been different. That is, if we had determined that the officer's statements were an unequivocal assertion that a warrant would be obtained. Similarly, in *Davis*, our Supreme Court—relying on *Shaulis-Powell*—determined that the officer's statements could "logically be construed as a reasonable explanation of the process an officer would follow after a defendant refused to consent to a search[,]" and held that the statement was not coercive without conducting a probable cause evaluation. 2013-NMSC-028, ¶ 26.

**{29}** Even so, it can hardly be said that the Agent Gallegos' assessment of the situation was baseless. When confronting Defendant with the fact that his neighbors had complained about his activities, Defendant conceded that his neighbors had been complaining: "Oh yeah. People have been saying that . . . They're just a bunch of haters." Moreover, when Agent Gallegos advised Defendant that the police had arrested individuals claiming to have bought drugs from him, Defendant did not deny selling drugs but instead responded "maybe weed?, " and later conceded that he had a "little weed" and methamphetamine on the premises. While examining the merit of Agent Gallegos' assessment is unnecessary to our holding, Defendant's corroboration of the complaints of his drug activities, did not go unnoticed by the majority.

**2.      An Offer to Forgo Arrest Is a Lawful Incentive**

**{30}** Here, as in *Shaulis-Powell*, Agent Gallegos' offer to forgo arrest if Defendant cooperated was a lawful incentive for Defendant's cooperation. While Agent Gallegos did tell Defendant that no arrest would be made if he would give consent for the search, Agent Gallegos did not state that the district attorney would not file charges in the event drugs were found during the search. On the contrary, Agent Gallegos specifically stated that, "Basically what we do is we take the dope and go back to the office and we'll write a report up and send it to the [d]istrict [a]ttorneys. If they decide they want to charge you that's up to them. Sometimes they do, sometimes they don't." These statements do not imply that cooperation meant that Defendant would never be arrested if drugs were found but only that he would not be arrested that day.

**{31}** Additionally, as stated above, Agent Gallegos' assessment of the situation was not coercive but merely a statement of what he believed would occur if a search warrant was obtained. Indeed Agent Gallegos stated that arrest was contingent on the discovery of drugs: "if you do have any drugs or whatever in your places we are going to seize them and you'll be arrested." Here, as in *Shualis-Powell*, Agent Gallegos' statement is a "reasonable explanation of the process that would be followed." 1999-NMCA-090, ¶ 15; *see also Davis*, 2013-NMSC-028, ¶ 24 ("A reasonable explanation of the possibility of arrest and the process that will follow, . . . is permissible and neither constitutes coercion or invalidates consent."). The legal choice presented by Agent Gallegos is directly analogues to the choice presented in *Shualis-Powell*, and likewise it is conceivable that Defendant, "might rather consent and secure the officer's cooperation than wait until a warrant is obtained." 1999-NMCA-090, ¶ 15. Accordingly, we affirm the district court's finding that Agent Gallegos' promise not to arrest Defendant if contraband was discovered was not a promise of leniency in exchange for consent and therefore not coercive.

**3.      The Presence of Armed Officers Is Not Inherently Coercive**

**{32}** With regard to the final issue raised by Defendant, we hold that the actions of the officers did not rise to the level of coercion or duress. In *Davis*, six or seven officers, armed with semi-automatic service weapons, approached the defendant outside of his residence. *Davis*, 2013-NMSC-028, ¶ 3. Only one officer made contact with the

defendant and there was no evidence on the record that the officer unholstered his weapon. *Id.* ¶ 5. The conversation between the officer and the defendant was "mild throughout" and the defendant was told multiple times that consent was voluntary. *Id.* ¶ 7.

**{33}** Similar to *Davis*, the interaction between Agent Gallegos and Defendant was cordial and mild. Here Defendant primarily spoke to one officer and was instructed on multiple occasions that consent was voluntary. Defendant conceded that no weapons were pointed at him and that the agents were generally respectful toward him. Indeed, the transcript of the encounter indicates that the interaction between Agent Gallegos and Defendant was not combative. Here as in *Davis*, we hold that the mere presence of armed officers was not enough to create coercion.

**CONCLUSION**

**{34}** Based on the forgoing, we affirm the district court's order denying Defendant's motion to suppress.

**{35}** **IT IS SO ORDERED.**

**JACQUELINE R. MEDINA, Judge**

**I CONCUR:**

**LINDA M. VANZI, Judge**

**BRIANA H. ZAMORA (dissenting).**

**B. ZAMORA, Judge (dissenting).**

**{36}** Warrantless searches of a home are presumptively unreasonable. *See Payton v. New York*, 445 U.S. 573, 586 (1980). This is because "[a]t the very core of [the Fourth Amendment] stands the right . . . to retreat into [one's] own home and there be free from unreasonable governmental intrusion[.]" *Griffin v. Wisconsin*, 483 U.S. 868, 883 (1987) (internal quotation marks and citation omitted); *see Payton* 445 U.S. at 585-586 ("Physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." (internal quotation marks and citation omitted)). With these fundamental principles in mind, when there is no probable cause to search a home, it is unreasonable for officers to induce a suspect's consent based solely on unsubstantiated claims, threats of securing a warrant, and arresting a suspect. For this reason, I respectfully dissent from the majority opinion and conclude that: (1) the statements by the officers were coercive, consisting solely of baseless threats and (2) the record did not support the district court's finding of probable cause.

**Statements to Defendant by Armed Officers Were Coercive**

**{37}** The State failed to meet its burden of proving that Defendant's consent was "freely and voluntarily given." *Bumper v. North Carolina*, 391 U.S. 543, 548 (1968). In determining whether consent was voluntary "we examine whether the consent was specific and unequivocal, and whether the consent was the result of duress or coercion, in light of the presumption disfavoring the waiver of constitutional rights." *Shaulis-Powell*, 1999-NMCA-090, ¶ 8. "[C]onsent is not voluntary if it is a mere acquiescence to a claim of lawful authority. *Id.* ¶ 10. While it is true that an "officer's threat . . . to perform some legal action . . . does not invalidate consent[,]" *id.* ¶ 14, when baseless threats are used to obtain consent to search, consent may be involuntary. *United States v. Jones*, 614 F.3d 423, 426 (7th Cir. 2010).

**{38}** In *Shaulis-Powell*, after the officers identified themselves, they requested consent to search and "[the defendant] asked whether they had a warrant." 1999-NMCA-090, ¶ 4. The officer responded that "they had no warrant, but that *he felt* that he had enough information to be able to secure one. [The officer] further stated that if no consent was forthcoming, he would seek to obtain a warrant[.]" *Id.* The officer then told the defendant "if [the defendant] consented and marijuana was found, no arrest would be made at that time, whereas if a warrant was obtained and marijuana was found, arrests would be made." *Id.* The officer's statements were not baseless threats because the officer's testimony established that he did, in fact, have probable cause. *See id.* ¶ 13.

**{39}** By contrast, in this case, no law enforcement officer testified. Consequently, the statements in this case consisted solely of baseless threats and went much further than the statements in *Shaulis-Powell*. Based on a transcript of the encounter taken from a recorder worn by one of the officers in this case, five armed officers arrived at the home of Defendant's mother, made unsubstantiated claims and then left him with what they said were his only two options. The officers stated that Defendant could consent to a search or, alternatively, the officers essentially guaranteed they would obtain a warrant, kick everyone out of the house and business, and then arrest him. Unlike in *Shaulis-Powell*, the officers continued pressing Defendant to consent using more intimidating statements. After reiterating Defendant's two options, an officer stated,

> I will tell you this, I've done over, I've petitioned for over 222 search warrants and I've never been denied one.[W]e get a search warrant, we search the place and then any drugs that you have we take with us and you will be arrested. You will be charged today.

**{40}** The officer's statements amounted to more than just the officer's "assessment of the situation" or "belief in his or her ability to obtain a warrant[.]" *Id.* ¶ 11; *Davis*, 2013-NMSC-028, ¶ 24. Contrary to the majority's opinion, by stating that they have petitioned for such a high number of search warrants and that they had never been denied, the officer was unequivocally asserting that he would be able to obtain a warrant and thus Defendant was merely acquiescing to a claim of lawful authority. *Davis*, 2013-NMSC-028, ¶ 23; *see also* 26 Am. Jur. 2d 465 *Proof of Facts* § 8 (2019) ("A consent will be found involuntary when given only after the police have clearly indicated their intent

ultimately to conduct a search with or without the defendant's consent, so that refusal of consent can only delay the inevitable.").

**{41}** In addition, the officers presented the two options in the context of their unsubstantiated claims that "people ha[d] been calling us and complaining about [Defendant] for a while," that people claimed they bought "dope from [Defendant,]" and the officers also claimed they had been "watching [Defendant's] house." *See* 26 Am. Jur. 2d 465 *Proof of Facts* § 8 ("A consent to search is also involuntary where it has been obtained by other misrepresentations, or by deceit or trickery practiced by the officers."); *United States v. Briley*, 726 F.2d 1301, 1304 (8th Cir. 1984) ("In contrast to the government's assertion that deception is permissible in obtaining consent, we have stated that misrepresentations about the nature of an investigation may be evidence of coercion. The misrepresentation may even invalidate the consent if the consent was given in reliance on the officer's deceit." (alteration, internal quotation marks, and citations omitted)). These allegations, which were wholly unsupported by anything in the record, provided credence to the officer's threats of obtaining a search warrant and arresting Defendant. Defendant testified that he consented because he did not want to go to jail, was concerned about being locked out of the house, which is also his scrap metal business, and was worried that it would harm his reputation. The officers' statements about obtaining a search warrant, arresting Defendant, and kicking everyone out of the house were clearly intended to induce consent and, when taken together, amounted to coercion. *See Davis*, 2013-NMSC-028, ¶ 23 (stating that the threat of arrest or "promises of leniency in exchange for consent" are factors in determining whether consent was coerced).

**{42}** Our "Constitution guarantees a society of free choice. Such a society presupposes the capacity of its members to choose." *Schneckloth v. Bustamonte*, 412 U.S. 218, 277 (1973) (Marshall, J., dissenting) (omission, internal quotation marks, and citation omitted). Here, the record before us establishes that Defendant did not truly have a choice and therefore, there was not valid consent. *See Bumper*, 391 U.S. at 550 ("Where there is coercion there cannot be consent.").

**The District Court's Finding of Probable Cause Was Unsupported by the Record**

**{43}** This Court stated in *Shaulis-Powell* that if there is "probable cause to support a warrant, the officer can inform the suspect that he or she will get a warrant without invalidating subsequent consent." 1999-NMCA-090, ¶ 12.

**{44}** The district court found that the officers had probable cause to arrest Defendant because "the officers' testimony that they had probable cause to obtain a warrant [was] convincing." Regrettably, the record contains no officer testimony. Indeed, the State conceded at the motion hearing below that the record was insufficient for a finding of probable cause because officer testimony was needed to support such a finding. Thus, the district court erroneously treated as "testimony" the transcript that contained the officers' statements to Defendant from the day they encountered Defendant.

**{45}**    We also do not know if the information the officers relayed to Defendant was accurate, was based on corroborating information, or whether it was merely a misrepresentation to induce consent. *See Connick v. Cty. of Bernalillo*, 1998-NMCA-060, ¶ 10 n.1, 125 N.M. 119, 957 P.2d 1153 (stating where "the record is silent, . . . we cannot speculate"); *Moruzzi v. Fed. Life & Cas. Co.*, 1938-NMSC-002, ¶ 50, 42 N.M. 35, 75 P.2d 320 ("The record is silent and it is not our place or duty to speculate[.]"). The record is devoid of evidence that the officers in fact received reports about Defendant selling drugs or that the officers conducted surveillance of Defendant's home. *See United States v. Hicks*, 539 F.3d 566 (7th Cir.) (stating that "[i]f the police did *not* have a reasonable basis to believe there was probable cause then it follows that any statement, or threat, that a search warrant could be obtained would necessarily be baseless and could *only* be merely a pretext to induce submission." (internal quotation marks and citation omitted)). Yet, the district court presumed that what the officer told Defendant was true. Instead, the evidence, in the minimal record before us, appears to point to the contrary. Specifically, the police report made no mention of the officers receiving reports that Defendant was using or selling drugs. Thus, the district court's finding of probable cause was unsupported by the record before us.

**{46}**    For the aforesaid reasons, I respectfully dissent.

**BRIANA H. ZAMORA, Judge**