**IN THE SUPREME COURT OF THE STATE OF NEW MEXICO**

**Opinion Number: 2021-NMSC-004**

**Filing Date: December 3, 2020**

**No. S-1-SC-37859**

**STATE OF NEW MEXICO,**

      Plaintiff-Respondent,

v.

**ROBERT L. LOVATO,**

      Defendant-Petitioner.

**ORIGINAL PROCEEDING ON CERTIORARI**
**Jeff McElroy, District Judge**

Released for Publication January 26, 2021.

Bennett J. Baur, Chief Public Defender
Kathleen T. Baldridge, Assistant Appellate Defender
Santa Fe, NM

for Petitioner

Hector H. Balderas, Attorney General
Eran Shemuel Sharon, Assistant Attorney General
Santa Fe, NM

for Respondent

**OPINION**

**NAKAMURA, Justice.**

**{1}** This case requires us to decide whether a law enforcement officer's threat to obtain a search warrant renders a subsequent consent to search involuntary. We hold that when a law enforcement officer procures consent to search through the threat to obtain a search warrant, and as a result the defendant believes refusal to consent would be futile, such consent is involuntary unless the law enforcement officer had probable cause to obtain a search warrant when the threat was made.

**{2}** Defendant Robert Lovato was charged with one count of possession of a controlled substance (methamphetamine) contrary to NMSA 1978, Section 30-31-23(A), (E) (2011, amended 2019) and one count of possession of marijuana (one ounce or less) contrary to Section 30-31-23(A), (B)(1). In the district court, Defendant moved to suppress evidence of the controlled substances recovered by law enforcement on the basis that his consent to the underlying search was involuntary. The motion was denied. Defendant subsequently pleaded guilty to one count of possession of a controlled substance (methamphetamine). Defendant appealed, and the Court of Appeals affirmed the district court. *State v. Lovato*, A-1-CA- 36312, mem. op. ¶ 1 (July 18, 2019) (non-precedential). Defendant then filed a petition for writ of certiorari, which we granted. The sole question on certiorari is whether Defendant's consent to search was voluntarily given. Holding that it was not, we reverse the Court of Appeals.

## I.    BACKGROUND

**{3}** Defendant was approached by the New Mexico State Police (NMSP) to conduct a "knock and talk" in reference to alleged complaints from neighbors that Defendant was dealing drugs on his property. After a brief discussion with Defendant about the property, where Defendant both lived and ran a scrapyard, Agent Joey Gallegos gave Defendant two options.[1]

> Alright well, we can do one of two things. Um, we can – right now I believe I have enough probable cause to obtain a search warrant for your place. For this area here and for your place back at home to search for narcotics. Um, if I petition in courts I'm granted a search warrant then we're going to take, if you do have any drugs or whatever in your places we are going to seize them and you'll be arrested. The second option is if you['re] willing to work with us and cooperate with us we're willing to do the same with you. If you voluntarily turn over any drugs that you may have or anything you may have and allow us to search voluntarily, it's free and voluntarily we don't consent we will not arrest you and instead what we'll do is just submit a report to the DA's. If they decide they want to charge you that['s] up to them, that's not up to us. But we're not going to charge or arrest you today. We just take the drugs and leave. You have my word that you don't get arrested.

**{4}** Defendant told Gallegos that he did not have any drugs and Gallegos reiterated that Defendant had two options. Gallegos then told Defendant that "people have been calling us and complaining about you for a while[,]" and Defendant acknowledged that people had complained, but characterized them as a "bunch of haters." Defendant asked Gallegos to repeat the options again, and Gallegos told Defendant:

> *I believe I have enough probable cause to obtain a search warrant for your place.* What that entails is, is that we kick everybody out, *we secure the*

---

[1]The "knock and talk" was recorded by one of the NMSP agents. A transcript of the recording was provided by the State. The recording is not part of the record before the Court.

*residence we kick everybody out.* And hum, go back to the office and petition for a search warrant, I will tell you this, I've done over, *I've petitioned for over 222 search warrants and I've never been denied one.* Um, we get a search warrant, we search the place and then any drugs that you have we take with us and you will be arrested. You will be charged today. So basically if you want to work with us and volunteer us, allow us to search the place it's your own free and voluntary consent. It's of your own free will. It's your choice. I'm not threatening you or anything. I'm just telling you the options of what I intend to do. Basically we just take the dope and leave. You won't be arrested. We don't arrest you today. (Emphasis added.**)**

Following further discussion, Defendant told Gallegos that there might be a little bit of marijuana in the house. When Gallegos again asked Defendant for consent to search, Defendant replied that he did not understand why a search was necessary. Gallegos responded that they had been watching Defendant's house and Defendant had been on the radar for a while. When Gallegos told Defendant that a few people had been arrested who said they'd bought "dope" from Defendant, Defendant responded, "Maybe weed?" Eventually, Defendant turned over methamphetamine and marijuana.

## II.    PROCEDURAL HISTORY

**{5}**     In the district court, Defendant moved to suppress the evidence of the methamphetamine and marijuana, arguing that his consent to search was coerced. Defendant claimed that Gallegos coerced him by, among other things, threatening to obtain a search warrant if Defendant did not consent to the search. At the suppression hearing, the only evidence offered by the State was a recording and transcript of the "knock and talk." It is not clear why NMSP agents were not present at the hearing.

**{6}**     Both Defendant and his investigator, Denis Romero, testified on behalf of the defense. Romero testified first, stating that he reviewed the discovery file and saw no indication of drug activity at Defendant's home, and nothing to corroborate Gallegos' statements that police had been receiving complaints and had arrested people who said they had bought drugs from Defendant. Defendant then testified that he did not know what to do when Gallegos sought Defendant's consent to search the premises. Defendant explained that Gallegos threatened to lock Defendant out of his residence and scrapyard while Gallegos obtained a search warrant. According to Defendant, although he did not want to give consent to the search, Gallegos' threat had a "big effect" on Defendant's ultimate decision to consent.

**{7}**     At the conclusion of the foregoing testimony, the district court asked the State if, under *State v. Shaulis-Powell*, 1999-NMCA-090, 127 N.M. 667, 986 P.2d 463, the NMSP agents could threaten to get a search warrant if they did not in fact have probable cause. The district court also asked if the statements pertinent to probable cause made by NMSP agents on the "knock and talk" recording could be taken at their word, or if additional evidence of probable cause would be necessary. The State acknowledged that a showing of probable cause was required and that the information

on the recording was insufficient evidence on that point. The State added: "You would have to hear from the officers . . . You can't even say that you wouldn't arrest them unless you have the ability to arrest them."

**{8}** Defendant, in closing, distinguished *Shaulis-Powell* from the facts in this case. Defendant emphasized that the Court of Appeals in *Shaulis-Powell* clearly held that probable cause was a close call but that, due to independent corroboration of the tip initially received by the police, a magistrate would likely have found probable cause. This was key to the Court of Appeals' conclusion that the consent to search was voluntary. *See* 1999-NMCA-090, ¶ 13. Defendant argued that no such corroboration existed here, and that therefore probable cause was lacking, such that the evidence should be suppressed.

**{9}** The district court confirmed that there was no additional evidence to consider and took the motion to suppress under advisement. Later, the district court denied the motion, finding that the officer's threat to secure the location while obtaining a search warrant was not "sufficiently coercive" to vitiate Defendant's consent to the search. It further concluded that, based on the "testimony" of the NMSP agents, there was probable cause to obtain a search warrant.

**{10}** Defendant eventually pleaded guilty, reserving his right to appeal. In the Court of Appeals, Defendant argued that the motion to suppress should have been granted, raising essentially the same arguments made in the district court. *See Lovato*, A-1-CA-36312, mem. op. ¶ 21. The Court of Appeals majority affirmed the district court but declined to reach the probable cause issue. *Id.* ¶¶ 28, 34. Specifically, the Court of Appeals held that, "[b]ecause Agent Gallegos' statements [about obtaining a warrant] were only assessments of the situation and not an unequivocal assertion [that a warrant could be obtained], it is unnecessary to reach a determination on the sufficiency of evidence to support probable cause for a search warrant." *Id.* ¶ 28.

**{11}** Judge Briana Zamora dissented. *Id.* ¶¶ 36-46 (Zamora, J., dissenting). According to the dissent, Gallegos "unequivocally assert[ed] that he would be able to obtain a warrant and thus Defendant . . . merely acquiesce[d] to a claim of lawful authority." *Id.* ¶ 40. The dissent also determined that the district court's finding of probable cause was not supported by substantial evidence, noting the State's concession that officer testimony would have been necessary to support such a finding. *Id.* ¶¶ 43-45. The dissent therefore concluded that Defendant's consent to the search was involuntary. *See id.* ¶¶ 42, 45

## III.   DISCUSSION

**{12}** On writ of certiorari to this Court Defendant again argues that his consent to search was involuntary, and that the district court should have suppressed the tainted evidence. Defendant argues that Gallegos' representation that Defendant had "two options"—consenting to an immediate search or waiting outside while police obtained a search warrant—was coercive. Defendant argues that the presence of five armed NMSP agents contributed to the coercive atmosphere. Defendant further asserts that

the district court's and the Court of Appeals' reliance on *Shaulis-Powell* is misplaced because, there, the record contained evidence of probable cause to obtain a search warrant, whereas here, such evidence was lacking. Defendant argues that, absent evidence of probable cause, the State could not show that Defendant's consent to search was voluntary under the circumstances.

**{13}** The State argues that the district court properly denied Defendant's motion to suppress. The State contends that the presence of five armed officers was not coercive, given that only Gallegos spoke with Defendant, no officer drew a weapon, and the interaction between Defendant and the officers was respectful. With respect to Gallegos' statement that he believed he had enough information to obtain a search warrant, the State argues that this is comparable to the statements made by police in *Shaulis-Powell*, where the statement was deemed to be an assessment of the situation, and not an unequivocal assertion that a warrant would be obtained. The State adds that, although Gallegos stated that he had never been denied a search warrant, the statement did not amount to a guarantee that a warrant would be issued. In response to Defendant's argument that the NMSP agents lacked probable cause, the State asserts that the "knock and talk" recording shows that there had been complaints of drug activity on Defendant's property; that recently arrested individuals identified Defendant as the person from whom they had purchased drugs; and that the property was under surveillance.

## A. Standard of Review

**{14}** In reviewing the denial of a motion to suppress, we defer to the district court's factual findings if they are supported by substantial evidence. *State v. Lopez*, 2005-NMSC-018, ¶ 9, 138 N.M. 9, 116 P.3d 80. This Court reviews the application of the law to those facts de novo. *State v. Davis*, 2013-NMSC-028, ¶ 10, 304 P.3d 10.

## B. Voluntariness of Consent to Search

**{15}** Whether consent to search is voluntary is a question of fact that depends on the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 226-27 (1973). "The State has the burden of proving that, under the totality of the circumstances, consent to search was given freely and voluntarily." *Davis*, 2013-NMSC-028, ¶ 13. The district court "must weigh the evidence and decide if it is sufficient to clearly and convincingly establish that the consent was voluntary." *Id.* Voluntariness is evaluated utilizing a three-tiered analysis: "(1) there must be clear and positive testimony that the consent was specific and unequivocal; (2) the consent must be given without duress or coercion; and (3) the first two factors are to be viewed in light of the presumption that disfavors the waiver of constitutional rights." *Id.* ¶ 14 (internal quotation marks and citation omitted). "Ultimately, the essential inquiry is whether [the d]efendant's will has been overborne." *Id.* (internal quotation marks and citation omitted).

**{16}** Here, there is no dispute that Defendant gave specific and unequivocal consent. Therefore, we move immediately to the second and third tiers of our analysis: whether

Defendant's consent was coerced, viewed in light of the presumption disfavoring the waiver of constitutional rights.

### 1.      Whether the officer's statements were coercive

**{17}**    The first question we must answer is whether Gallegos' statements seeking Defendant's consent to search were coercive. Specifically, were Gallegos' statements a mere assessment of Defendant's situation, akin to the statements made in *Shaulis-Powell*, or were they an unequivocal assertion that a search warrant would be obtained? A mere assessment is indicative of voluntary consent. *Shaulis-Powell*, 1999-NMCA-090, ¶ 11; *Davis*, 2013-NMSC-028, ¶ 23. By contrast, "[w]hen an officer unequivocally asserts that he will be able to obtain a warrant, a defendant's belief that refusal to consent would be futile demonstrates involuntary consent." *Davis*, 2013-NMSC-028, ¶ 23.

**{18}**    As a threshold matter, we note that both *Shaulis-Powell* and the present case concern a "knock and talk," an investigative technique "in which police go to a suspect's home in an attempt to gain [the suspect's] cooperation[,]" or in other words, the suspect's consent to search. *State v. Flores*, 2008-NMCA-074, ¶ 5, 144 N.M. 217, 185 P.3d 1067. In *Flores*, the officer testified that police typically use this technique "when [they] do not believe they have sufficient information to establish probable cause for a search warrant." *Id.* ¶ 5. Because the "knock and talk" technique has the potential to be abused by police, we "carefully scrutinize the facts . . . with special care to [e]nsure that a constitutionally impermissible level of coercion is not exerted to obtain consent." *Id.* ¶ 14.

**{19}**    *Shaulis-Powell* involved a defendant who was growing marijuana behind his residence. 1999-NMCA-090, ¶ 2. Police received a tip from a "known citizen informant" that the defendant was engaged in this activity. *Id.* Police then drove on a dirt road behind the defendant's residence looking for any sign of "suspicious vegetation." *Id.* One police officer believed that he saw marijuana on the defendant's property based on the officer's experience and the color of the vegetation. *Id.* When police approached the defendant's residence, his mother answered the door, told police she was only visiting, and called the defendant's wife to the door. *Id.* ¶ 3. Police asked the defendant's wife for consent to search but she stated that she would like to first speak with the defendant. *Id.* ¶ 4. Eventually, the defendant came to the door and asked whether the police had a search warrant. *Id.* The officer stated that he did not have a warrant but "felt that he had enough information to be able to secure one." *Id.* The officer also explained that seeking to obtain a search warrant "would require summoning more officers to secure the residence and [to] ensure that no evidence was destroyed." *Id.* The defendant consented to the search. *Id.* ¶ 5.

**{20}**    The defendant moved to suppress the evidence obtained as a result of the search, but the district court denied the motion, finding that the defendant "voluntarily consented to the search of his property[.]" *Id.* ¶ 8. On appeal, the defendant argued that "because the officers told him that they had enough evidence to obtain a search warrant," refusing consent to the search "would have been futile." *Id.* ¶ 10. The Court of

Appeals recognized that "consent is not voluntary if it is a mere acquiescence to a claim of lawful authority." *Id.* ¶ 10. However, it held that the officer had not unequivocally asserted that he would obtain a search warrant, but had only stated that he "felt" or "believed" he had enough evidence to secure a search warrant. *Id.* ¶ 11. The Court characterized such a statement as an "assessment of the situation." *Id.*

**{21}** We conclude that the statements in this case are distinguishable from those made in *Shaulis-Powell*. We find it impossible to characterize Gallegos' statement that he had obtained over 222 search warrants and had never once been denied as a mere assessment of the situation. Rather, such a statement amounts to an unequivocal assertion that a search warrant is forthcoming. In addition, Gallegos made this statement in the midst of presenting Defendant with "two options"— Defendant could consent to the search or Gallegos would get a search warrant and Defendant would be kicked out of the residence pending the arrival of the warrant. This communicated that a search of Defendant's property was inevitable. *See United States v. Kaplan*, 895 F.2d 618, 622 (9th Cir. 1990) ("Courts have drawn distinctions where, on one hand, an officer merely says that he will attempt to obtain a search warrant or whether, on the other hand, he says he can obtain the search warrant, as if it were a foregone conclusion."). Indeed, Defendant testified that he "didn't know what to do," and felt that, in effect, he had no other option but to consent. As we have stated, "[w]hen an officer unequivocally asserts that he will be able to obtain a warrant, a defendant's belief that refusal to consent would be futile demonstrates involuntary consent." *Davis*, 2013-NMSC-028, ¶ 23. The only possible exception to this rule is where the officer in fact possessed probable cause to search or, in other words, where an assertion of lawful authority was justified. *See Shaulis-Powell*, 1999-NMCA-090, ¶ 12. Thus, we turn to that issue.[2]

## 2.      Whether there was probable cause to obtain a search warrant

**{22}** Where an officer's statements amount to an unequivocal assertion that a search warrant will be obtained, such an assertion does not vitiate subsequent consent provided there is probable cause to support a warrant. *Shaulis-Powell*, 1999-NMCA-090, ¶ 12 (relying on *United States v. Evans*, 27 F.3d 1219, 1231 (7th Cir. 1994) and *Kaplan*, 895 F.2d at 622). Notably, it is not enough that the threat to obtain a search warrant is made in good faith; "there must *in fact* be probable cause." 4 Wayne R. LaFave, *Search and Seizure* § 8.2(c), at 99 (6th ed. 2020). Moreover, where an officer threatens to seize or detain property while obtaining a warrant, as here, where Gallegos told Defendant that he would be ejected from his property pending the issuance of a warrant, such a threat must also be supported by a demonstration of probable cause. *See*, *e.g.*, *id.* at 100 (noting that police may not misrepresent "the scope or extent of the authority they would have under such a search warrant or *preliminary to its issuance*") (emphasis added) (footnote omitted). We review the factual findings undergirding the

---

2We need not address Defendant's argument that the presence of five armed police officers added to the coercive nature of the interaction between Defendant and the NMSP, since we find that Gallegos' statements were sufficiently coercive to vitiate consent, absent probable cause.

district court's determination on the issue of probable cause for substantial evidence. *State v. Martinez*, 2020-NMSC-005, ¶ 15, 457 P.3d 254.

**{23}** In *Shaulis-Powell*, the Court of Appeals reached the question of probable cause, despite the Court's conclusion that the character of the officer's statements did not mandate such an inquiry. 1999-NMCA-090, ¶¶ 12-13. It concluded that "[a]lthough the existence of probable cause is a close question in this case, we think it likely that a magistrate would have issued a warrant." *Id.* ¶ 13. Evidence supporting probable cause included a tip from a citizen informant that police corroborated "by visiting the location and observing, in the precise location described, plants that appeared to be marijuana based on the officers' experience." *Id.* In *Evans* and *Kaplan*, both of which were relied upon by the Court of Appeals in *Shaulis-Powell*, 1999-NMCA-090, ¶ 12, the Circuit Courts of Appeal similarly held that there was probable cause for a search warrant, such that the officer's threat to obtain one did not render the defendant's subsequent consent involuntary. *See Evans*, 27 F.3d at 1231; *Kaplan*, 895 F.2d at 622. The substantial evidence supporting a finding of probable cause in those cases is instructive.

**{24}** In *Evans*, the defendant was charged with and convicted of, among other things, operating, maintaining, and controlling a chop shop. 27 F.3d at 1222. Before trial, the defendant moved to suppress evidence that was seized after FBI agents searched the property where the defendant lived with his father and ran a car repair business from the garage. *Id.* The agents had arrested the defendant and spoken with the defendant's father, informing the father that they would obtain a warrant if he did not consent to a search. *Id.* at 1223. Eventually, the defendant's father consented. *Id.* at 1224. The district court found the father's consent to be voluntary and denied the motion to suppress. *Id.* at 1224, 1231.

**{25}** On appeal, the defendant argued that his father's consent was rendered involuntary by the agents' representation that they would obtain a warrant if consent was withheld. *Id.* at 1229-31. The Seventh Circuit Court of Appeals disagreed, holding that, because the agents had probable cause to obtain a warrant to search the repair shop, the statement that one would be obtained did not vitiate consent. *Id.* at 1231 The evidence of probable cause included testimony from FBI agents that, based on information from two confidential informants and observations during surveillance, the suspected car thief's modus operandi was to put stolen license plates on stolen vehicles, and to drive them to an unknown disposal location; the suspected car thief delivered a stolen vehicle with a stolen license plate to defendant's garage; and numerous vehicles were parked on or around the premises of defendant's garage. *Id.* at 1229.

**{26}** In *Kaplan*, the defendant was a medical doctor who was charged with and convicted of mail fraud and prescribing controlled substances without a legitimate medical purpose. 895 F.2d at 619. The defendant moved to suppress evidence that was obtained after FBI agents searched his office, but that motion was denied. *Id.* at 622-23. On appeal, the defendant argued that his consent was coerced because it was given only after agents told him that a search warrant could be obtained if he refused to

consent. *Id.* at 622. However, the Ninth Circuit Court of Appeals affirmed the district court, holding that even if the agents' statements "made it improperly appear to the defendant that the obtaining of a search warrant was a fait accompli, this error was not fatal under the circumstances of this case since there was probable cause to obtain a warrant[.]" *Id.* The Court made this determination based on testimonial evidence that the defendant had accepted a bag of simulated marijuana from an undercover FBI agent in exchange for prescribed controlled substances. *Id.* at 620, 622.

**{27}**   In *Shaulis-Powell*, *Evans*, and *Kaplan*, officer testimony and other competent evidence was presented at the suppression hearing to prove the existence of probable cause. *See*, *e.g.*, *Shaulis-Powell*, 1999-NMCA-090, ¶ 11; *Evans*, 27 F.3d at 1231; *Kaplan*, 895 F.2d at 621-22. Here, none of the parties believed the recording of the "knock and talk" was sufficient evidence of probable cause, and the State thought it necessary to inform the district court that "You would have to hear from the officers . . . You can't even say that you wouldn't arrest them unless you have the ability to arrest them." Nonetheless, the district court did not hear from the officers, or receive any other evidence from the State; it relied solely upon the recording of the "knock and talk" and the transcript of that recording. This evidence alone could not illuminate whether Gallegos was being truthful or whether he was only representing to Defendant that the police had been surveilling the property and receiving complaints and tips regarding Defendant's alleged drug dealing. Therefore, the district court's conclusion that the NMSP agents had probable cause to search is purely speculative and is not supported by substantial evidence.

## IV.    CONCLUSION

**{28}**   Absent a showing of probable cause, a defendant's mere acquiescence to an assertion of lawful authority renders a subsequent search unlawful. *Shaulis-Powell*, 1999-NMCA-090, ¶ 10. Viewing the facts of this case in light of the presumption disfavoring the waiver of constitutional rights, we hold that the State failed to prove that its assertion of lawful authority was supported by probable cause. Because the State did not meet its burden of proving that Defendant's consent was voluntary, Defendant's motion to suppress should have been granted. We reverse the Court of Appeals' affirmance of the district court's denial of Defendant's motion to suppress and remand to the district court for further proceedings in accordance with this opinion.

**{29}   IT IS SO ORDERED.**

**JUDITH K. NAKAMURA, Justice**

**WE CONCUR:**

**MICHAEL E. VIGIL, Chief Justice**

**BARBARA J. VIGIL, Justice**

**C. SHANNON BACON, Justice**

**DAVID K. THOMSON, Justice**