This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**No. A-1-CA-39431**

**STATE OF NEW MEXICO,**

> Plaintiff-Appellee,

v.

**MARK A. HEITZ,**

> Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF CHAVES COUNTY**
**Dustin K. Hunter, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

**MEMORANDUM OPINION**

**ATTREP, Judge.**

**{1}** Defendant appeals from the district court's judgment and sentence, convicting him of criminal sexual contact of a minor in the second degree (under 13) and enticement of a child. Unpersuaded by Defendant's docketing statement, we issued a notice of proposed summary affirmance. Defendant has responded to our notice with a memorandum in opposition, which we have duly considered. We remain unpersuaded and affirm.

**{2}** In response to our notice, Defendant contends that his consent to turn over his cell phone to officers, while the officers were executing a search warrant of his home,

was invalid because his consent constituted mere acquiescence to a coercive show of authority. [MIO 4-8] Defendant analogizes the circumstances of this case to those in *State v. Lovato*, 2021-NMSC-004, 478 P.3d 927, and *State v. Pierce*, 2003-NMCA-117, 134 N.M. 388, 77 P.3d 292. [MIO 6-8] Defendant also distinguishes the circumstances of the current case from those in *State v. Shaulis-Powell*, 1999-NMCA-090, ¶¶ 10-12, 127 N.M. 667, 986 P.2d 463, in which this Court held that the officer obtained the defendant's consent to the search, not by conveying that refusing consent would be futile, but by assessing the situation without coercion and also having probable cause for the search. We are not persuaded by Defendant's analogy to *Lovato* and *Pierce* or his attempt to distinguish *Shaulis-Powell*.

**{3}**   In *Lovato*, our Supreme Court held that the defendant's consent was invalid where the officers made statements that indicated an unequivocal assertion that a search was inevitable and a refusal would be futile. 2021-NMSC-004, ¶ 21. The Court concluded that the officer's statement "that he had obtained over 222 search warrants and had never once been denied," combined with the officer's presentation of two options to the defendant—that he could consent or the officer "would get a search warrant and [the d]efendant would be kicked out of the residence pending the arrival of the warrant"—communicated to the defendant that a search of his property was inevitable and his refusal would be futile. *Id.*; *see also State v. Davis*, 2013-NMSC-028, ¶ 23, 304 P.3d 10 ("When an officer unequivocally asserts that he will be able to obtain a warrant, a defendant's belief that refusal to consent would be futile demonstrates involuntary consent."). Accordingly, our Supreme Court held that the defendant's consent was rendered involuntary. *Lovato*, 2021-NMSC-004, ¶ 21.

**{4}**   In *Pierce*, under notably restrictive and coercive circumstances, this Court held that where two officers detained the defendant for over twenty minutes in handcuffs on a curb, stood over him and repeatedly asked the defendant to consent to a search, and continued to press him for information, the defendant's eventual capitulation to remove the object from his pocket was not free from coercion and duress. 2003-NMCA-117, ¶ 21.

**{5}**   In contrast, in this case, officers were finishing a search of Defendant's home pursuant to a valid search warrant when Defendant and his father entered the residence. [3 RP 727] Defendant and his father were treated respectfully. [3 RP 732] An officer explained to Defendant what the officers were doing at his house and what they were looking for and asked if Defendant had his cell phone on him. [3 RP 727, 732] Defendant indicated that he did and immediately removed the cell phone from his pocket. [3 RP 728] The officer asked if she could have the cell phone, and Defendant immediately and without any hesitation or pause handed the cell phone to the officer. [3 RP 728] The officer did not demand that Defendant turn over his cell phone. [3 RP 728] There was no use of force, no brandishing of weapons, no lengthy or abusive questioning, and no threat of force or arrest. [3 RP 733] Defendant and his father were not detained, prevented from leaving the home, or arrested at any time; rather they were sitting together in the living room and could move freely around the property. [3 RP 727, 732] The officer made no statement indicating that Defendant could not or should

not refuse to give her the cell phone, there were no coercive tactics, and no indication that Defendant's will was overborne.

**{6}**     We believe the current facts are more analogous to those in *Shaulis-Powell*, in which this Court determined that the officer's statements merely reflected his own assessment of the situation and that the defendant's consent was not obtained by duress. 1999-NMCA-090, ¶ 11. In *Shaulis-Powell*, two officers appeared at the defendant's door without a warrant or uniforms, but were wearing guns, identified themselves, and asked for consent to search the premises for marijuana plants. 1999-NMCA-090, ¶¶ 3-4. An officer told the defendant that he felt he had enough information to obtain a warrant and that if the defendant did not give consent, then he would seek to obtain a warrant, which would require more officers to come and secure the residence to make sure no evidence was destroyed. *Id.* ¶ 4. The officer also explained that if the defendant consented, then he would not arrest the defendant or his wife, but if a warrant was obtained and marijuana was found, arrests would be made. *Id.* The defendant consented to the search and later moved to suppress, arguing that his consent was the result of duress or coercion. *Id.* ¶¶ 5-10. This Court noted that although there were facts that weigh against voluntary consent—i.e., the defendant and his wife were not advised of their rights until after the search, the officer stated a belief that he had enough evidence for a warrant, and there was a threat of arrest if the defendant did not consent—the officer's statements simply reflected his assessment of the situation, did not convey that refusal to consent would be futile, and constituted lawful incentive for the defendant's cooperation. *Id.* ¶¶ 11, 14-16. This Court also stated that where there is probable cause to support a warrant, "the officer can inform the suspect that he or she will get a warrant without invalidating subsequent consent." *Id.* ¶ 12; *see id.* (stating also that "[i]f a warrant is obtainable, defendants' privacy rights under the Fourth Amendment are not violated").

**{7}**     Similarly, the facts of this case reflect that the officer told Defendant what was happening at his residence, what they were looking for, and why they were searching. The officers did not threaten to arrest Defendant and did not express any opinion about whether they could get a warrant to search his person. As in *Shaulis-Powell*, we determine that the officer in this case was simply stating an assessment of the situation before she asked if Defendant had his cell phone and if she could have it. We see no indication that the officers used coercion to obtain Defendant's cell phone. Additionally, Defendant makes no argument that the officers lacked probable cause to search for the cell phone, and the search warrant for the home authorized seizure of the cell phone.

**{8}**     To the extent Defendant believes that the officers' presence in his residence pursuant to a search warrant was so intimidating that it invalidated his consent, we are not persuaded. In a more intimidating show of authority than that in the current case and that in *Shaulis-Powell*, our Supreme Court in *Davis* held that the defendant's consent was valid. *Davis*, 2013-NMSC-028, ¶ 27. In *Davis*, the following show of authority was presented: there were six or seven law enforcement officers armed with semi-automatic weapons; several government vehicles were present and formed a perimeter around the defendant's house; a helicopter was hovering fairly closely overhead; one of the

armed officers confronted the defendant at the door and asked for permission to search; and the defendant expressed discontent with the officers searching and a belief that the officers were searching anyway, and that he did not have any options. *Id.* ¶¶ 3, 5-6, 28. The Court reasoned that despite the strong presence of law enforcement and even though the officer told the other officers to "hold on," suggesting a warrantless search had already begun, the officer corrected the defendant's misunderstanding that they started searching, talked conversationally, presented him with a consent-to-search form, and merely stated they would try to get a search warrant if the defendant refused. *Id.* ¶¶ 26, 28, 32.

**{9}** In light of our Supreme Court's holding that the strong show of authority in *Davis* did not invalidate the defendant's consent, we are not persuaded that the presence of the officers in Defendant's home pursuant to a valid search warrant and the seemingly respectful and distanced manner with which the officers treated Defendant rose to the level of coercion or duress that would invalidate the voluntary nature with which he handed over his cell phone.

**{10}** For these reasons, we are not persuaded that the district court erred by denying Defendant's motion to suppress, where it concluded that Defendant voluntarily consented to the seizure of his cell phone. Because we affirm on this basis, we do not address Defendant's arguments related to the scope of the warrant. Accordingly, we affirm the district court's judgment and sentence.

**{11} IT IS SO ORDERED.**

**JENNIFER L. ATTREP, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**SHAMMARA H. HENDERSON, Judge**