This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-40534**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**MARK A. HEITZ,**

Defendant-Appellant.

**APPEAL FROM THE DISTRIC COURT OF CHAVES COUNTY**
**Dustin K. Hunter, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Allison H. Jaramillo, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**DUFFY, Judge.**

**{1}** Defendant appeals from the district court's judgment and sentence, convicting him of possession of visual medium of sexual exploitation (child under thirteen), pursuant to NMSA 1978, Section 30-6A-3(A). [5 RP 1193] Unpersuaded by Defendant's docketing statement, we issued a notice of proposed summary affirmance. Defendant has responded to our notice with a memorandum in opposition, which we have duly considered. We remain unpersuaded and affirm.

**{2}**     In response to our notice, Defendant contends that his consent to turn over his cell phone to officers, while the officers were executing a search warrant of his home, was invalid because his consent was not voluntarily given and was instead a mere acquiescence to a coercive show of authority. [MIO 5-11] "We review the trial court's factual determination that Defendant's consent was voluntary, given the totality of the circumstances, for substantial evidence." *State v. Chapman*, 1999-NMCA-106, ¶ 19, 127 N.M. 721, 986 P.2d 1122. Defendant analogizes the circumstances of this case to those in *State v. Lovato*, 2021-NMSC-004, 478 P.3d 927, and *State v. Pierce*, 2003-NMCA-117, 134 N.M. 388, 77 P.3d 292. [MIO 7-10] Defendant also distinguishes the circumstances of the current case from those in *State v. Shaulis-Powell*, 1999-NMCA-090, ¶¶ 10-12, 127 N.M. 667, 986 P.2d 463, in which this Court held that the officer obtained the defendant's consent to the search by assessing the situation without coercion and having probable cause for the search. We are not persuaded by Defendant's analogy to *Lovato* and *Pierce* or his attempt to distinguish *Shaulis-Powell*.

**{3}**     In *Lovato*, our Supreme Court held that the defendant's consent was invalid where the officers made an unequivocal assertion that a search was inevitable and a refusal would be futile. 2021-NMSC-004, ¶ 21. The Court concluded that the officer's statement "that he had obtained over 222 search warrants and had never once been denied," combined with the officer's presentation of two options to the defendant—that he could consent or the officer "would get a search warrant and [the d]efendant would be kicked out of the residence pending the arrival of the warrant"—communicated to the defendant that a search of his property was inevitable and his refusal would be futile. *Id.*; *see also State v. Davis*, 2013-NMSC-028, ¶ 23, 304 P.3d 10 ("When an officer unequivocally asserts that he will be able to obtain a warrant, a defendant's belief that refusal to consent would be futile demonstrates involuntary consent."). Accordingly, our Supreme Court held that the defendant's consent was rendered involuntary. *See Lovato*, 2021-NMSC-004, ¶ 21. In *Pierce*, under notably restrictive and coercive circumstances, this Court held that where two officers detained the defendant for over twenty minutes in handcuffs on a curb, stood over the defendant while repeatedly asking for consent to a search, and continued to press the defendant for information, the defendant's eventual capitulation to remove the object from his pocket was not free from coercion and duress. 2003-NMCA-117, ¶ 21.

**{4}**     Here, officers were finishing a search of Defendant's home pursuant to a valid search warrant when Defendant and his father entered the residence. [2 RP 450] Defendant and his father were treated respectfully. [2 RP 455] An officer explained to Defendant what the officers were doing at his house and what they were looking for, and the officer asked if Defendant had his cell phone on him. [2 RP 450] Defendant indicated that he did and immediately removed the cell phone from his pocket. [2 RP 451] The officer asked if she could have the cell phone, and Defendant immediately, and without any hesitation or pause, handed the cell phone to the officer. [*Id.*] The officer did not demand that Defendant turn over his cell phone. [*Id.*] There was no use of force, no brandishing of weapons, no lengthy or abusive questioning, and no threat of force or arrest. [2 RP 456] *See State v. Chapman*, 1999-NMCA-106, ¶ 21 (noting that defining duress or coercion in the context of consent to search borrows from

considerations associated with coerced confessions, such as a threatening display of weapons, improper use of force, deprivation of food and water, improper promise of leniency, or threat to prosecute for crimes not committed). During the search, Defendant was directed to sit on the couch in his living room, and although Defendant did not testify that he was not free to leave, there is evidence to suggest Defendant was not permitted to move throughout the house while the search was ongoing. [MIO 4; 2 RP 455; 3 RP 529] The officers made no statement indicating that Defendant could not or should not refuse to hand over his cell phone, no coercive tactics were employed, and Defendant was not physically restrained or placed in handcuffs.

{5}     We believe the facts here are more analogous to those in *Shaulis-Powell*, where two officers wearing guns appeared at the defendant's door without a warrant or uniforms, identified themselves, and asked for consent to search the premises for marijuana plants. 1999-NMCA-090, ¶¶ 3-4. This Court noted that although there were facts that weigh against voluntary consent—i.e., the defendant and his wife were not advised of their rights until after the search, the officer stated a belief that he had enough evidence for a warrant, and there was a threat of arrest if the defendant did not consent—the officer's statements simply reflected his assessment of the situation, did not convey that refusal to consent would be futile, and constituted lawful incentive for the defendant's cooperation. *Id.* ¶¶ 11, 14-16. This Court also stated that where there is probable cause to support a warrant, "the officer can inform the suspect that he or she will get a warrant without invalidating subsequent consent." *Id.* ¶ 12 ("If a warrant is obtainable, [the] defendants' privacy rights under the Fourth Amendment are not violated.").

{6}     The facts of this case reflect that the officer told Defendant what was happening at his residence, what they were looking for, and why they were searching. The officers did not threaten to arrest Defendant and did not express any opinion about whether they could get a warrant to search his person. As in *Shaulis-Powell*, we believe that the officer in this case was simply stating an assessment of the situation before she asked if Defendant had his cell phone and if she could have it. We see no indication that the officers used coercion to obtain Defendant's cell phone. Additionally, Defendant makes no argument that the officers lacked probable cause to search for the cell phone, and the search warrant for the home authorized seizure of the cell phone. [2 RP 449]

{7}     To the extent Defendant suggests that the officers' presence in his residence pursuant to a search warrant was so intimidating that it invalidated his consent, we are not persuaded. In a more intimidating show of authority than that in the current case, our Supreme Court in *Davis* held that the defendant's consent was valid. 2013-NMSC-028, ¶ 27. In *Davis*, there were six or seven law enforcement officers armed with semi-automatic weapons, several government vehicles in a perimeter around the defendant's house, and a helicopter hovering overhead. *Id.* ¶ 3. When one of the armed officers confronted the defendant at the door and asked for permission to search, the defendant expressed discontent with the officers searching, a belief that the officers were searching anyway, and displeasure with that he did not have any options. *Id.* ¶¶ 5-6. The Court reasoned that although there was a strong presence of law enforcement, the

officers conducted themselves in a professional manner, never unholstered their weapons, directly addressed the defendant's concerns that a search had already begun, and communicated in calm, slow tones to explain to the defendant he was not required to consent. *Id.* ¶¶ 26, 32. In light of our Supreme Court's holding that the strong show of authority in *Davis* did not invalidate the defendant's consent, we are not persuaded that the presence of the officers in Defendant's home pursuant to a valid search warrant, coupled with the seemingly respectful, yet stern, manner with which the officers treated Defendant rose to the level of coercion that would invalidate the voluntary nature of his consent.

**{8}** Furthermore, we note that "[l]awful, non-coercive police activity does not in and of itself constitute the type of duress that makes consent involuntary." *Chapman*, 1999-NMCA-106, ¶ 19. Our courts recognize that, under a limited set of circumstances, the police have the authority to temporarily detain a resident during searches conducted pursuant to a search warrant. *See State v. Madsen*, 2000-NMCA-050, ¶¶ 14-17, 129 N.M. 251, 5 P.3d 573 (applying concept that "a warrant to search for contraband founded on probable cause implicitly carries with it the limited authority to detain the occupants of the premises while a proper search is conducted" and that "the existence of the search warranted provides an objective justification for the detention"); *see State v. Graves*, 1994-NMCA-151, ¶ 12, 119 N.M. 89, 888 P.2d 971 (recognizing that a resident may be lawfully detained during the execution of a residential search warrant). Defendant has cited to no authority to suggest that under the facts of this case, the officers overcame Defendant's will by directing him to sit down and remain in his living room while the search was ongoing. *See Lovato*, 2021-NMSC-004, ¶ 15 (stating that the essential inquiry in determining whether consent to search is voluntary is whether, under the totality of the circumstances, "the defendant's will has been overborne" (alteration, internal quotation marks, and citation omitted)); *see also State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (stating that "given no cited authority, we assume no such authority exists").

**{9}** Accordingly, and for the reasons stated in our notice of proposed disposition and herein, we affirm.

**{10}  IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Judge**

**KATHERINE A. WRAY, Judge**