This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

No. A-1-CA-41559

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.

**TERRY NAUMAN,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Lucy Solimon, District Court Judge**

Raúl Torrez, Attorney General
Santa Fe, NM
Tyler Sciara, Assistant Solicitor General
Albuquerque, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Nina Lalevic, Assistant Appellate Defender
Santa Fe, NM

for Appellant

### MEMORANDUM OPINION

**HANISEE, Judge.**

**{1}** Defendant Terry Nauman appeals his conviction for child solicitation by electronic communication device (child under 13) (appears for meet), pursuant to NMSA 1978, Section 30-37-3.2(C)(2) (2007). Defendant argues the district court erred because it denied Defendant's motion to suppress the contents of Defendant's phone based on an involuntary consent to search and failed to exclude sold and destroyed evidence or provide a jury instruction regarding such evidence. Defendant also argues that his

speedy trial rights were violated and he was provided ineffective assistance of counsel because his counsel did not file a motion to dismiss based on his speedy trial rights. We affirm.

## DISCUSSION

### I.    Consent to Search Defendant's Cell Phone

**{2}** Defendant was arrested following a 2014 sting operation in which an Albuquerque Police Department detective, working with the United States Department of Homeland Security in the Sexual Predator Exploitation Enforcement Detail, posed as a twelve-year old-female and arranged a meeting with Defendant. Defendant contends the district court erred in denying his motion to suppress the ensuing search of his cell phone, arguing that the search was unconstitutional because his consent was not voluntary.

**{3}** "Appellate review of a motion to suppress presents a mixed question of law and fact. First, we look for substantial evidence to support the district court's factual finding, with deference to the district court's review of the testimony and other evidence presented." *State v. Martinez*, 2018-NMSC-007, ¶ 8, 410 P.3d 186 (alteration, internal quotation marks, and citations omitted). "We then review the application of the law to those facts, making a de novo determination of the constitutional reasonableness of the search or seizure." *Id.* (internal quotation marks and citation omitted).

**{4}** The district court determined that Defendant voluntarily consented to a search of his cell phone, which is a question of fact to be determined from the totality of the circumstances. *See State v. Lovato*, 2021-NMSC-004, ¶ 15, 478 P.3d 927. We consider three factors in determining whether consent is voluntary: "(1) the consent must be unequivocal and specific, (2) the consent must be given without duress or coercion, and (3) the first two factors must be assessed with a presumption against the waiver of constitutional rights." *State v. Flores*, 1996-NMCA-059, ¶ 20, 122 N.M. 84, 920 P.2d 1038. In conducting our review, "the question is whether the [district] court's decision is supported by substantial evidence, not whether the [district] court could have reached a different conclusion." *State v. Davis*, 2013-NMSC-028, ¶ 10, 304 P.3d 10 (alterations, internal quotation marks, and citation omitted).

**{5}** Defendant argues that the district court's determination that Defendant consented to the search of his phone is "incorrect." Notably, Defendant does not argue that there was an absence of clear and positive testimony that his consent was specific and unequivocal. *See Lovato*, 2021-NMSC-004, ¶ 15. Because there is no dispute as to this factor, we move to the two remaining factors: whether Defendant's consent was the result of duress or coercion, and whether the consent was voluntary considering the presumption disfavoring the waiver of constitutional rights. *See Davis*, 2013-NMSC-028, ¶ 14.

**{6}** Defendant contends that his consent was not voluntary because the situation was too intertwined with what the district court separately determined to have been a *Miranda* violation occasioned by officers' questions of Defendant prior to his waiving his right to remain silent. Defendant contends this constitutional violation, along with the facts that Defendant was being questioned in a police station, was in custody, made statements about his life being over, and might not have known he did not need to consent despite his own asserted law enforcement experience demonstrate his consent was coerced. We disagree and conclude that substantial evidence demonstrates that Defendant's consent was not the product of duress or coercion.

**{7}** "Coercion involves police overreaching that overcomes the will of the defendant." *Id.* ¶ 23 (internal quotation marks and citation omitted). Specific factors that may indicate coercion include threats of violence or arrest, lengthy questioning, the use of force, brandishing weapons, or promising leniency in exchange for consent. *Id.* The evidence does not indicate the officers overreached or overcame Defendant's will.

**{8}** Though the district court found Defendant's rights were violated because police began the interrogation before they read him his *Miranda* rights, officers read him those rights before he consented to the search of his cell phone, including his right to remain silent and a warning that anything Defendant said would be used against him in a court of law. We agree with the State that "*Miranda* warnings are not a prerequisite to obtaining a valid consent to search," *State v. Mann*, 1985-NMCA-107, ¶ 23, 103 N.M. 660, 712 P.2d 6, because "a request for consent to search is not, by itself, an interrogation, just as consent to search is not an incriminating response." *State v. Juarez*, 1995-NMCA-085, ¶ 14, 120 N.M. 499, 903 P.2d 241. Further, though we consider whether Defendant was in custody, such alone does not establish that the consent was involuntary. *See State v. Herring*, 1966-NMSC-266, ¶ 13, 77 N.M. 232, 421 P.2d 767 ("Although the fact that consent is given while in custody or under arrest is clearly a factor to consider, we do not believe that such a situation makes voluntary consent impossible."). To the contrary, Defendant was at the station for less than an hour, and no threats, weapons, or abusive questioning were used to obtain his consent. Moreover, our review of the record reveals Defendant was conversational, fully cooperative, and he himself observed that under the circumstances a judge would likely sign a warrant for his phone if one were sought by detectives.

**{9}** Viewing the evidence with a presumption against the waiver of constitutional rights, we hold there was substantial evidence to support a finding that Defendant's consent to the search was voluntarily given without duress or coercion. We therefore affirm the district court's denial of Defendant's motion to suppress the evidence discovered in the search of his phone.

## II.    Destruction of Evidence

**{10}** Defendant's cell phone was auctioned off by police before trial. Defendant next argues the district court's remedy for the loss of evidence was inadequate. "New Mexico has adopted a three-part test to determine whether deprivation of evidence is reversible

error." *State v. Chouinard*, 1981-NMSC-096, ¶ 16, 96 N.M. 658, 634 P.2d 680. The test considers whether (1) the state "either breached some duty or intentionally deprived the defendant of evidence[,]" (2) the lost or destroyed evidence was material, and (3) "[t]he suppression of this evidence prejudiced the defendant." *Id.* (internal quotation marks and citation omitted). "Where the loss [of evidence] is known prior to trial, there are two alternatives: [e]xclusion of all evidence which the lost evidence might have impeached, or admission with full disclosure of the loss and its relevance and import." *Id.* ¶ 23. "The choice between these alternatives must be made by the [district] court, depending on its assessment of materiality and prejudice." *Id.* "Determination of materiality and prejudice must be made on a case-by-case basis." *Id.* ¶ 25.

**{11}** "We review a district court's remedy for lost or destroyed evidence for an abuse of discretion." *State v. Redd*, 2013-NMCA-089, ¶ 18, 308 P.3d 1000. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case." *Id.* "Additionally, we view the evidence and the inferences drawn from that evidence in favor of the district court's ruling." *Id.*

**{12}** Defendant filed a motion to suppress evidence of a report that resulted from a Cellebrite extraction of Defendant's cell phone after the police auctioned off the cell phone and destroyed the disk containing the original Cellebrite extraction file. As stated, when Defendant was arrested he gave oral and written consent to allow his cell phone to be searched. At that time, his cell phone was taken into a separate room and an extraction was performed on the phone by an unknown officer. A sergeant received the extraction within hours of the phone's surrender by Defendant, and the phone remained in her custody until she tagged it into evidence. Defendant was charged with the sole count in this case in 2018, but the phone was auctioned and the media containing the original extraction file was destroyed in 2021. A member of the Bernalillo County Sheriff's Office authorized the destruction of the evidence after incorrectly concluding that the statute of limitations had run. As a result, the original media containing the file generated by the Cellebrite software used to perform the original extraction no longer existed at the time of trial and the parties only had access to an HTML file of the extraction. Defendant filed a motion to suppress based on the destruction of evidence. The district court denied Defendant's motion, but permitted Defendant to cross-examine witnesses about the fact that they personally did not perform the extraction and highlight that the phone had been sold and original file had been destroyed.

**{13}** Defendant argues the evidence was material to his case because there was not much other evidence in the case besides the evidence regarding the officers' general operation, the text messages contained on the phone itself were the crux of the case, and the passage of years over the course of the prosecution. However, Defendant does not explain what information the original device and file would include that would undermine the files that the State presented. Thus, any assertion that the jury's verdict was influenced because of its inability to view the original files is speculative and fails to establish the materiality of the evidence. *See State v. Branch*, 2018-NMCA-031, ¶ 52, 417 P.3d 1141 (recognizing that the "mere possibility" that evidence might have helped the defendant or affected the outcome of the trial "does not establish materiality"

(internal quotation marks and citation omitted)). Moreover, Defendant questioned both witnesses at trial about them not being the officers who performed the extraction, about their information about the extraction, and whether the HTML file from which the text messages were presented at trial in fact was the original file. Under these circumstances, we conclude Defendant failed to establish prejudice resulting from the lost evidence and the district court did not abuse its discretion in choosing to not exclude the evidence. *See State v. Duarte*, 2007-NMCA-012, ¶ 11, 140 N.M. 930, 149 P.3d 1027 (explaining that the importance of the missing evidence to the defendant is a component of prejudice under *Chouinard*).

**{14}** Defendant next argues that the district court erred in not providing the jury with UJI 14-5062 NMRA, the adverse inference instruction for lost, destroyed, or uncollected evidence. But, the giving of this instruction is only required in circumstances where the evidence is material and the destruction thereof prejudiced Defendant. *See id.* comm. cmt. In circumstances such as this, where materiality and prejudice are not established, the giving of the instruction is discretionary. *See id.* (noting the instruction "may" be given in certain circumstances). Thus, the district court did not err when it declined to provide the adverse inference jury instruction. *See id.* use note 1 ("For use upon a court's finding that the [s]tate breached a duty to preserve material evidence and the deprivation of evidence was prejudicial to the defendant.").

### III.     Speedy Trial

**{15}** Defendant argues that, though he did not preserve his claim for a speedy trial violation, the violation of his speedy trial right amounts to fundamental error. We employ the fundamental error exception to the preservation rule "only under extraordinary circumstances to prevent the miscarriage of justice." *State v. Silva*, 2008-NMSC-051, ¶ 13, 144 N.M. 815, 192 P.3d 1192 (internal quotation marks and citation omitted). "Accordingly, we will use the doctrine to reverse a conviction only if the defendant's guilt is so questionable that upholding a conviction would shock the conscience, or where, notwithstanding the apparent culpability of the defendant, substantial justice has not been served. Substantial justice has not been served when a fundamental unfairness within the system has undermined judicial integrity." *Id.* (internal quotation marks and citation omitted).

**{16}** Defendant's fundamental error argument is limited to announcing the length of the delay, asserting the effect on the physical evidence and memories of witnesses was "undeniable," and stating that the delay shocks the conscious. Defendant does not cite specific authority for this fundamental error proposition, and does not meaningfully engage with the relevant factors necessary for a determination that an individual's speedy trial rights were violated based on the fundamental error standard. *See State v. Vigil-Giron*, 2014-NMCA-069, ¶ 60, 327 P.3d 1129 (explaining that where a party fails to cite any authority in support of an issue, appellate courts will not consider the issue); *State v. Guerra*, 2012-NMSC-014, ¶ 21, 278 P.3d 1031 (noting that appellate courts have no obligation to review unclear or undeveloped arguments). Because Defendant does not meet his burden of sufficiently demonstrating error, we decline to review for

fundamental error and affirm the district court. *See State v. Aragon*, 1999-NMCA-060, ¶ 10, 127 N.M. 393, 981 P.2d 1211 (providing that "[t]here is a presumption of correctness in the district court's rulings" and "it is [the d]efendant's burden on appeal to demonstrate any claimed error below" (alterations, internal quotation marks, and citation omitted)).

## IV.  Ineffective Assistance of Counsel

**{17}**  Defendant's final argument is that defense counsel's failure to adequately protect his right to a speedy trial deprived him of his right to effective assistance of counsel. The State responds that the record is insufficient to establish that counsel's performance was deficient and therefore the ineffective assistance of counsel claim is more properly brought through a habeas corpus petition. We agree with the State and explain.

**{18}**  "To establish ineffective assistance of counsel, a defendant must show that[] (1) counsel's performance fell below that of a reasonably competent attorney; (2) no plausible, rational strategy or tactic explains counsel's conduct; and (3) counsel's apparent failings were prejudicial to the defense." *State v. Miera*, 2018-NMCA-020, ¶ 30, 413 P.3d 491 (internal quotation marks and citation omitted) "The completeness of the record determines whether we address a claim of ineffective assistance of counsel through direct appeal." *State v. Pate*, 2023-NMCA-088, ¶ 26, 538 P.3d 450 (internal quotation marks and citation omitted).

**{19}**  The whole of Defendant's argument is that he would have prevailed on a speedy trial motion had one been made. The record, however, does not demonstrate why defense counsel did not pursue a speedy trial claim or the rationale for defense counsel not objecting to the length of the proceedings. *See State v. Crocco*, 2014-NMSC-016, ¶ 14, 327 P.3d 1068 ("If facts necessary to a full determination are not part of the record, an ineffective assistance claim is more properly brought through a habeas corpus petition." (internal quotation marks and citation omitted)). Accordingly, the record is not adequately developed to determine whether defense counsel's action was a reasonable trial tactic. *See State v. Roybal*, 2002-NMSC-027, ¶ 21, 132 N.M. 657, 54 P.3d 61 ("[I]f on appeal we can conceive of a reasonable trial tactic which would explain the counsel's performance, we will not find ineffective assistance."). Accordingly, we conclude that Defendant's ineffective assistance of counsel claim is more properly brought through a habeas corpus petition. *See Pate*, 2023-NMCA-088, ¶ 27 ("In New Mexico, it is often repeated that habeas corpus proceedings are preferable to direct appeal for ineffective assistance of counsel claims.").

## CONCLUSION

**{20}**  We affirm.

**{21}  IT IS SO ORDERED.**

**J. MILES HANISEE, Judge**

**WE CONCUR:**

**KRISTINA BOGARDUS, Judge**

**JANE B. YOHALEM, Judge**